J-A19016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID MATTHEW MAZZOCCO | |
| Appellant | No. 466 WDA 2014 |

Appeal from the Judgment of Sentence February 18, 2014
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004913-2013

BEFORE: BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 12, 2015**

Appellant David Mazzocco appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas following his jury trial conviction for first-degree murder,[1] attempted murder,[2] aggravated assault,[3] and recklessly endangering another person ("REAP").[4] We affirm.

The trial court summarized the underlying facts of this matter as follows:

> . . . [O]n Sunday, March 10, 2013, [Appellant] and his girlfriend, Samantha Snatchko, had dinner at a friend's house. During

---

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 901(a).

[3] 18 Pa.C.S. § 2702(a).

[4] 18 Pa.C.S. § 2705.

dinner [Appellant] had between 4 and 6 beers. He also bought 40 Xanax pills from a friend earlier that day and had taken 15 of them throughout the day. After dinner, [Appellant] displayed three (3) handguns and an AR-15 rifle to other guests at the party, who were gun enthusiasts. At the conclusion of the meal, [Appellant] took Snatchko home because she was uncomfortable with his drinking and drug use and also with the display of guns. He then went to the Fort Pitt Inn, a bar located on Steubenville Pike in North Fayette. While in the bar, he had 2 beers and 2 shots of Crown Royal, at which point the bartender refused to serve him any more alcohol. Throughout the evening, [Appellant] was telephoning and texting Snatchko on his cell phone and repeatedly left the bar and then came back inside. It was subsequently revealed that Snatchko was attempting to end the relationship and [Appellant] was alternately upset and begging to come see her and jealous because he thought she had another man at her house. During one of the trips outside, [Appellant] returned with a smashed cell phone and then asked to use the bar phone. Later in the evening, [Appellant] went outside and returned with a bloody hand from breaking a window in his truck and told his friends Dave and Ryan Thomas, with whom he had been sitting, to leave the bar. He then reached into his pocket, pulled a handgun and fired two shots, hitting patrons James Adams and James Quirk in the head.[5] At that point, two other patrons, Gerald Maroni and Juan Rodriguez, rushed [Appellant] and attempted to subdue him. Another shot was fired, this time hitting Maroni in the arm. Eventually Maroni and Rodriguez managed to wrestle the gun away from [Appellant], and Maroni beat [Appellant] in the head several times with the gun in order to subdue him. Maroni and Rodriguez held [Appellant] down until the police arrived and handcuffed him. [Appellant] was taken to Mercy Hospital, where he was treated and released. He was then transported to the Homicide Division, where he was permitted to sleep and offered food. He told police that he had not been provoked, but rather began shooting for no reason and intended to keep shooting until the police arrived.

---

[5] The shot to the head killed James Adams. James Quirk survived, but with grievous and permanent injuries.

1925(a) Opinion, pp. 2-3.

Following a trial conducted November 7-21, 2013, a jury convicted Appellant of first-degree murder, two counts of attempted murder, two counts of aggravated assault, and one count of REAP.[6] On February 18, 2014, the trial court sentenced Appellant to life imprisonment without parole on the first-degree murder conviction and consecutive sentences of 10 to 20 years of imprisonment for each of the attempted murder convictions. The trial court imposed no further penalties for the remaining convictions.

Appellant filed post-sentence motions[7] on February 25, 2014, which the trial court denied by order filed on March 4, 2014. Appellant filed a notice of appeal on March 24, 2014. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following four claims for review:

I. Did the [t]rial [c]ourt err when it denied [Appellant's] post-trial motion to vacate the verdict of guilty and enter judgment of acquittal as to first-degree murder, third-degree murder, attempted homicide, aggravated assault and recklessly endangering another person on grounds that the evidence was insufficient to support verdicts of guilty, in particular the [Commonwealth] failed to disprove the defenses of self-defense and imperfect self-defense?

---

[6] At the conclusion of the Commonwealth's case, the trial court granted Appellant's motion for acquittal on four other counts of REAP.

[7] Appellant's post-sentence motions included a weight of the evidence claim.

[II.] Did the [t]rial [c]ourt err when it denied [Appellant's] post-trial motion to vacate the verdict of guilty and order a new trial as to first-degree murder, third-degree murder, attempted homicide, aggravated assault and recklessly endangering another person on grounds that [the] verdict was against the weight of the evidence, in particular the [Commonwealth] failed to disprove the defenses of self-defense and imperfect self-defense?

[III.] Did the [t]rial [c]ourt err when it denied [Appellant's] motion to suppress the statement he allegedly made to the Allegheny County Police because it was not a knowing and voluntary statement?

[IV.] Did the [t]rial [c]ourt err when it imposed a sentence of "life without the possibility of parole" because it is an unlawful sentence in that a sentencing court's authority is limited to imposing a sentence of life imprisonment?

Appellant's Brief, p. 6.[8]

### A. *The Sufficiency of the Evidence Claim*

Appellant first claims that the Commonwealth adduced insufficient evidence to convict him of his various crimes. **See** Appellant's Brief, p. 16. Specifically, Appellant claims the Commonwealth failed to adequately disprove the defenses of self-defense and imperfect self-defense. **See id.** at 19-24. He is incorrect.

When examining a challenge to the sufficiency of evidence, this Court's standard of review is as follows:

_____

[8] The argument section of Appellant's brief combines his sufficiency of the evidence and weight of the evidence claims into a single claim. **See** Appellant's Brief, pp. 6, 16-24. For the sake of clarity, we regard and discuss these claims as separate claims herein.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa.Super.2014).

Pennsylvania's Crimes Code governs self-defense, and provides, in relevant part, as follows:

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.--** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.--**

. . .

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

. . .

(2.3) An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat and has the right to stand his ground and use force, including deadly force, if:

(i) the actor has a right to be in the place where he was attacked;

(ii) the actor believes it is immediately necessary to do so to protect himself against death, serious bodily injury, kidnapping or sexual intercourse by force or threat; and

(iii) the person against whom the force is used displays or otherwise uses:

(A) a firearm or replica of a firearm as defined in 42 Pa.C.S. § 9712 (relating to sentences for offenses committed with firearms); or

(B) any other weapon readily or apparently capable of lethal use.

18 Pa.C.S. § 505.

This Court recently explained justified use of deadly force in self-defense in detail as follows:

According to our Supreme Court, the justified use of deadly force requires:

- 6 -

a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Harris,* 542 Pa. 134, 137, 665 A.2d 1172, 1174 (1995). The defendant has no "burden to prove" his self-defense claim. *Commonwealth v. Torres*, 564 Pa. 219, 224, 766 A.2d 342, 345 (2001). The Supreme Court explained the evidentiary burdens as follows:

While there is no burden on a defendant to prove the [self-defense] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Smith*, 97 A.3d at 787. The Commonwealth sustains this burden if it establishes at least one of the following beyond a reasonable doubt:

1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Id.* (quoting *Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa.Super.2008), *appeal denied,* 600 Pa. 743, 964 A.2d 894 (2009).

The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Smith*, 97 A.3d at 787 (quoting *Commonwealth v. Mouzon*, 617 Pa. 527, 551, 53 A.3d 738, 752 (2012)).

> To claim self-defense, the defendant must be free from fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force.

*Smith*, 97 A.3d at 787 (quoting *Mouzon*, 53 A.3d at 751).

> If the defendant's own testimony is the only evidence of self-defense,
>
> the Commonwealth must still disprove the asserted justification and cannot simply rely on the jury's disbelief of the defendant's testimony:
>
>> The disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact. The trial court's statement that it did not believe Appellant's testimony is no substitute for the proof the Commonwealth was required to provide to disprove the self-defense claim.
>
> If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to reject or accept all, part or none of the testimony of any witness. The complainant can serve as a witness to the incident to refute a self-defense claim.

*Smith,* 97 A.3d at 788 (internal quotations and citations omitted).

> Further,
>
> [a]lthough the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim.
>
> A number of factors, including whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident, are all relevant when determining the reasonableness of a defendant's belief

that the use of deadly force was necessary to protect against death or serious bodily injuries. Furthermore, a physically larger person who grabs a smaller person does not automatically invite the smaller person to use deadly force in response.

*Smith*, 97 A.3d at 788 (internal quotations and citations omitted).

In addition to self-defense, which, if successful, results in acquittal, a first-degree murder defendant may also claim that he committed an "unreasonable belief killing." This defense, otherwise known as "imperfect self-defense," if employed successfully, does not result in acquittal, but instead results in a conviction for voluntary manslaughter in lieu of first-degree murder. The Crimes Code defines imperfect self-defense as follows:

> **Unreasonable belief killing justifiable.**--A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. § 2503(b). "The derivative and lesser defense of imperfect belief self-defense is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must [be satisfied to prove] unreasonable belief voluntary manslaughter." *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa.2012) (internal citations and quotations omitted). As with self-defense, a defendant must be free from fault to successfully employ the defense of imperfect self-defense. *Sepulveda*, 55 A.3d at 1124-25.

Here, Appellant presented a justification defense of self-defense at trial. Appellant testified that Adams had earlier threatened to kill him because Appellant had taken Adams' job. Appellant further testified that he saw Adams reach into his pocket and pull out a gun. He claims, fearing for his life, he shot Adams in the face and then accidentally shot Quirk. He also testified someone else fired the shot that hit Maroni in the arm. Appellant's own testimony was the only self-defense evidence.

The physical evidence and the testimony of other witnesses, however, refute Appellant's testimony. This evidence established that all three shots fired in the altercation came from the same weapon – Appellant's gun – and that Adams did not have a gun at all. Further, the bartender and the other bar patrons all testified that they had not witnessed any interaction whatsoever between the two men prior to Appellant shooting Adams.

The trial court correctly assessed the evidence presented in relation to Appellant's self-defense and imperfect self-defense claims:

> Here, the Commonwealth presented evidence that was more than sufficient to disprove [Appellant's] trial claim of self-defense (and his appellate claim of imperfect self-defense). The Commonwealth was able to establish, through the testimony of the bartender and every patron who was at the bar at the time of the shooting, that there had been no confrontation between [Appellant] and Adams, and, in fact, there had been no contact or conversation at all between them. The Commonwealth was able to prove through physical evidence that Adams did not have a gun, and so could not have been pulling out a gun as [Appellant] claimed. Although [Appellant] claimed that someone else was shooting (presumably at him), the Commonwealth was able to prove through ballistics evidence that all three shots were fired by [Appellant], from his weapon. Moreover, the

Commonwealth was able to prove that once [Appellant] shot Adams – who [Appellant] claimed was the only threat or source of confrontation – he continued to shoot, hitting James Quirk in the head and Gerald Maroni in the arm.

Ultimately, the evidence very clearly demonstrated that there was no threat or confrontation that would have required [Appellant] to protect or defend himself. Rather, the evidence demonstrated that [Appellant], who had been drinking and taking prescription drugs was angered and upset over the break-up with his girlfriend, left the bar and went to his truck where he deliberately armed himself with three handguns. When he returned to the bar he told his friends to leave, then pulled out a gun and, without warning or provocation, began shooting.

These facts provide absolutely no basis for a claim of self-defense or imperfect self-defense. The Commonwealth clearly established that [Appellant] was the aggressor, and so met its burden of disproving the claim of self-defense (as well as the [appellate] claim of imperfect self-defense). This claim must fail.

1925(a) Opinion, pp. 5-6.

Accordingly, Appellant's sufficiency of the evidence claim based on the Commonwealth's alleged failure to disprove self-defense and/or imperfect self-defense fails.

### B. *The Weight of the Evidence Claim*

Appellant next claims that the verdict was against the weight of the evidence. *See* Appellant's Brief, p. 16. Appellant bases this claim on his argument that the Commonwealth failed to adequately disprove the defenses of self-defense and imperfect self-defense. *See id.* at 19-24. He is again incorrect.

The denial of a new trial based on a lower court's determination that the verdict was not against the weight of the evidence is one of the least

- 11 -

assailable reasons for granting or denying a new trial. ***See Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa.2013). This Court reviews weight of the evidence claims pursuant to the following standard:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa.2000) (internal citations, quotations, and footnote omitted).

Stated differently, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice,[9] "such that right must be

---

[9] This Court has explained the notion of "shocking to one's sense of justice" as follows:

> When the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall

*(Footnote Continued Next Page)*

- 12 -

given another opportunity to prevail." *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa.Super.1997). Moreover, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Widmer*, 744 A.2d at 753. When reviewing the trial court's determination, this Court gives the gravest deference to the findings of the court below. We review the court's actions for an abuse of discretion. *Id.*

Simply stated, the jury's verdict in this matter illustrates that the jury found credible the testimony of the Commonwealth's witnesses that Appellant was the aggressor and fired his weapon unprovoked, and incredible Appellant's testimony to the contrary. This evidence, as discussed *supra*, clearly disproved Appellant's defenses of self-defense and imperfect self-defense. The trial court agreed with the jury's assessment in denying Appellant's post-sentence motion for a new trial based on the weight of the evidence. *See* 1925(a) Opinion, p. 8. Nothing about the verdict or the trial court's reasoning shocks the conscience. Thus, Appellant's weight of the evidence claim warrants no relief.

*(Footnote Continued)* ————————

from the bench, then it is truly shocking to the judicial conscience.

*Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa.Super.2004) (internal citations and quotations omitted).

## C. *The Suppression Claim*

Next, Appellant claims that the trial court erred by not suppressing his post-arrest statement to police. *See* Appellant's Brief, pp. 24-30. Specifically, he claims the statement was not knowingly and voluntarily made because he was still suffering from the combined effects of a head injury, medication received at the hospital, and his drug and alcohol use from the previous day. *See id.* He is incorrect.

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa.2010) (internal citations and quotation marks omitted).

> When a court is called upon to determine whether a confession is voluntary and, hence, admissible at trial, it examines the totality

of the circumstances surrounding the confession to ascertain whether it is the product of an essentially free and unconstrained choice by its maker. In making this inquiry, a court is not concerned with the issue of whether the substance of the confession is true. Rather, a court is constrained to examine only whether an individual's confession was the product of coercion, duress, or the use of other measures by interrogators deliberately calculated to overcome his or her free will.

**Commonwealth v. Smith**, 85 A.3d 530, 537-38 (Pa.Super.2014). "By the same token, the law does not require the coddling of those accused of crime. [The accused] need not be protected against his own innate desire to unburden himself." **Commonwealth v. Templin**, 795 A.2d 959, 966 (Pa.2002) (quoting **Commonwealth v. Graham**, 182 A.2d 727, 730–31 (Pa.1962)).

When assessing voluntariness pursuant to the totality of the circumstances, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

**Commonwealth v. Harrell**, 65 A.3d 420, 434 (Pa.Super.2013), *appeal denied*, 101 A.3d 785 (Pa.2014) (quoting **Commonwealth v. Nester**, 709 A.2d 879, 882 (Pa.1998)).

"The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily." **Harrell**, 65 A.3d at 434. "The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review." **Commonwealth v. Roberts**, 969 A.2d 594, 599 (Pa.Super.2009).

- 15 -

The testimony at the suppression hearing revealed the following. Appellant had a blood alcohol level of 1.57% at 2:22 a.m. He was combative and needed to be restrained at 3:00 a.m. Additionally, he was given Haldol and Ativan to calm him so the medical personnel could administer a CT scan. Although Appellant was diagnosed with a concussion, the CT scan was negative for head injury. After receiving stitches for a head laceration, Appellant was discharged in an alert and stable condition, with a zero pain score, and with no evidence learning considerations or barriers prevented him from understanding discharge instructions.

Upon his transport to the police station, police placed Appellant in a 12-foot-by-12-foot interrogation room and shackled one of his legs to a bolt on the floor. Appellant declined food and drink. The police allowed him to sleep until 11:00 a.m.

At 11:00 a.m., two detectives entered the interrogation room and spoke with Appellant. Appellant requested and received a cigarette. The police explained that this would be Appellant's opportunity to tell his version of the events, and advised him of his **Miranda**[10] rights by reading Allegheny County Police's "Rights Warning Waiver" form. Appellant had no questions about the form, which he initialed and signed in the appropriate places. In addition to executing the waiver form, Appellant indicated verbally that he

---

[10] **Miranda v. Arizona**, 384 U.S. 436, 86 S. Ct. 1602 (1966).

wished to speak with police about the incident. Although he seemed tired during the conversation regarding his waiver of rights, Appellant asked appropriate questions. During the interview, Appellant gave responsive and appropriate answers to the questions posed. He did not appear intoxicated; his speech was not slurred, and he was not swaying in his seat. The interview concluded at 11:45 a.m.

Based on this evidence, the trial court assessed Appellant's suppression claim as follows:

> . . . Gerald Maroni beat [Appellant] about the head in an attempt to subdue him after the shooting. However, [Appellant] was conscious, albeit belligerent and verbally abusive to the police at the scene. He remained so at the hospital and was sedated to permit medical treatment. However, upon his release from Mercy Hospital, [Appellant] was cleared for incarceration. He was permitted to, and in fact[] did, sleep for several hours and was offered food and beverages before questioning began. When the questioning began, [Appellant] gave responsive answers and did not appear to be impaired.
>
> [Appellant's] averment that he does not remember the interrogation remains suspect. It appears that he is attempting to claim that the memory loss was the product of the beating by Maroni, however, careful examination of the record reveals that [Appellant] has also claimed selective memory loss from before the shooting, particularly where he denied knowing how his phone got smashed. It seems clear to this [c]ourt that [Appellant] is attempting to use the "memory loss" to his benefit for "forgetting" any particularly damaging behavior or anything that he might otherwise not be able to explain.
>
> Nevertheless, [Appellant's] claim that he does not remember making a statement is not sufficient to defeat its admissibility. At the time of questioning, [Appellant] was coherent and gave appropriately responsive answers; the fact that the substance of the answers he gave was damaging to his case does not mean that the statement was involuntary or

inadmissible. Ultimately, that is the sum and substance of [Appellant's] argument: the statement is damaging therefore it should not have been admitted. All credible evidence demonstrates that [Appellant] knowingly, voluntarily and intelligently waived his *Miranda* rights, and, as a result, the statement was admissible. This [c]ourt was well within its discretion in denying [Appellant's] suppression and post-trial motions in this regard.

1925(a) Opinion, pp. 9-10 (record citations omitted).

The suppression court's factual findings are supported by the record and its legal conclusions drawn from those facts are correct. Therefore, Appellant's suppression claim fails.

## D. *The Sentencing Claim*

Finally, Appellant claims the trial court illegally sentenced him to serve a life sentence without parole. *See* Appellant's Brief, pp. 30-35. He is incorrect.

This Court's scope and standard of review for illegal sentence claims is as follows:

The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

*Commonwealth v. Leverette*, 911 A.2d 998, 1001-1002 (Pa.Super.2006) (internal citations omitted).

Pennsylvania's Crimes Code provides, in pertinent part:

**§ 1102. Sentence for murder, murder of unborn child and murder of law enforcement officer**

**(a) First degree.--**

(1) Except as provided under section 1102.1 (relating to sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer), a person who has been convicted of a murder of the first degree or of murder of a law enforcement officer of the first degree shall be sentenced to death or to a term of life imprisonment in accordance with 42 Pa.C.S. § 9711 (relating to sentencing procedure for murder of the first degree).

18 Pa.C.S. § 1102(a)(1). Additionally, Pennsylvania's Prisons and Parole Code provides:

**§ 6137. Parole power**

**(a) General criteria for parole.--**

(1) The board may parole subject to consideration of guidelines established under 42 Pa.C.S. § 2154.5 (relating to adoption of guidelines for parole) and may release on parole any inmate to whom the power to parole is granted to the board by this chapter, ***except an inmate condemned to death or serving life imprisonment***, whenever . . .

61 Pa.C.S. § 6137 (emphasis provided). Further, our case law "unequivocally bars all parole for first degree murderers whether the sentence is life or death." ***Commonwealth v. Yount***, 615 A.2d 1316, 1320 (Pa.Super.1992).

Clearly, the trial court had the authority to impose the sentence it did. Based on the above law, Appellant's claim that the trial court lacked the

authority to sentence Appellant to life imprisonment without parole is without merit and borders on frivolous.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/12/2015