J-S50040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARNELL WHITE | |
| Appellant | No. 2957 EDA 2014 |

Appeal from the Judgment of Sentence July 8, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012882-2012

BEFORE: PANELLA, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED DECEMBER 10, 2015**

Appellant Darnell White appeals from the judgment of sentence entered following his open guilty plea to firearms not to be carried without a license[1] and possession of firearms prohibited.[2]   After careful review, we affirm.

We summarize the relevant facts and procedural history as follows. On the afternoon of April 12, 2012, Appellant and his cohort, Hakeem Burley, engaged in a gunfight with another individual, Shekinah Williams, which resulted from a perceived insult uttered by Burley with respect to Williams.   After the insult, Williams produced a 9 mm handgun and fired

_____

[1] 18 Pa.C.S. § 6106(a)(1).

[2] 18 Pa.C.S. § 6105(a)(1).

eleven (11) shots at Appellant and Burley. Appellant produced a 9 mm handgun of his own and fired ten (10) shots at Williams. The firefight left Burley with a bullet wound to the arm. Additionally, a bullet from Williams' gun shot and killed Clarice Douglas, a 41-year-old innocent bystander.

The night of the gunfight, a confidential informant told police that Appellant had been involved in the shooting. Later, at approximately 7:30 p.m. on May 9, 2012, police located Appellant and transported him to the homicide unit at police headquarters for an interview. After waiving his *Miranda*[3] rights, Appellant spoke with police and ultimately remained in the interview room that evening and throughout the following day.[4] At approximately 7:00 p.m. on the evening of May 10, 2012, Appellant again waived his *Miranda* rights and gave a statement wherein he admitted his possession of the 9 mm gun and his involvement in the firefight, although he explained he had not killed anyone. Police released Appellant after he provided the statement.

Police arrested Appellant in October 2012 on gun charges stemming from the firefight. On July 18, 2013, Appellant filed a motion seeking suppression of his statements made to police on May 9-10, 2012, which he

_____

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

[4] Appellant was not handcuffed, and was allowed to sleep, eat, drink, and go to the bathroom upon request.

claimed were involuntary. The suppression court conducted a hearing and denied Appellant's motion on August 22, 2013.

On March 24, 2014, Appellant entered an open guilty plea to firearms not to be carried without a license and possession of firearms prohibited subject to an agreement between Appellant and the Commonwealth that Appellant would be allowed to challenge the denial of his suppression motion on direct appeal. On July 8, 2013, the trial court sentenced Appellant to three (3) to six (6) years of incarceration on the firearms not to be carried without a license conviction, followed by two (2) years of probation on the possession of firearms prohibited conviction.

On July 16, 2014, Appellant filed a post-sentence motion for reconsideration of sentence, which the trial court denied on October 2, 2014. Appellant filed a notice of appeal on October 9, 2014. Appellant and the trial court complied with Pa.R.A.P. 1925.[5]

Appellant raises the following issues for our review:

A. Did the suppression court improperly deny [Appellant's] motion to suppress his inculpatory statements where the detectives unnecessarily delayed his arraignment following his arrest to conduct unnecessary investigation and extended his

---

[5] The certified record contains two Pa.R.A.P. 1925(a) opinions: one filed by the trial court judge on February 2, 2015 ("trial court 1925(a) opinion"), and a second filed by the suppression court judge on March 16, 2015 ("suppression court 1925(a) opinion") in response to the trial court's December 12, 2014 request that the suppression judge file a separate Pa.R.A.P. 1925(a) opinion addressing the suppression motion, the hearing on the motion, and the resulting order.

detention for the sole purpose of obtaining incriminating statements?

B.   Did the suppression court improperly deny [Appellant's] motion to suppress his inculpatory statements where police arrested him without a warrant and without probable cause, and detained him in the homicide unit overnight?

Appellant's Brief, pp. 2-3 (all capitals removed).

Both of Appellant's claims concern alleged error regarding the suppression court's ruling.  This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.  Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the courts below are subject to [] plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa.2010) (internal citations and quotation marks omitted).

Appellant first claims that improper police interrogation tactics, specifically detaining him at the police station for over 24 hours without

arrest, coerced him into confessing involuntarily. **See** Appellant's Brief, pp. 13-27. He is incorrect.

> When a court is called upon to determine whether a confession is voluntary and, hence, admissible at trial, it examines the totality of the circumstances surrounding the confession to ascertain whether it is the product of an essentially free and unconstrained choice by its maker. In making this inquiry, a court is not concerned with the issue of whether the substance of the confession is true. Rather, a court is constrained to examine only whether an individual's confession was the product of coercion, duress, or the use of other measures by interrogators deliberately calculated to overcome his or her free will.

**Commonwealth v. Smith**, 85 A.3d 530, 537-38 (Pa.Super.2014). "By the same token, the law does not require the coddling of those accused of crime. One such need not be protected against his own innate desire to unburden himself." **Commonwealth v. Templin**, 795 A.2d 959, 966 (Pa.2002) (quoting **Commonwealth v. Graham**, 182 A.2d 727, 730–31 (Pa.1962)).

As our Supreme Court has explained:

> The mere fact that there is some passage of time between when an accused is arrested and when he or she gives an inculpatory statement does not constitute grounds for suppression of the statement. Numerous factors should be considered under a totality of the circumstances test to determine whether a statement was freely and voluntarily made: the means and duration of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or

medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

*Commonwealth v. Martin*, 101 A.3d 706, 724-25 (Pa.2014), *cert. denied*

*sub nom.* *Martin v. Pennsylvania*, 136 S.Ct. 201 (2015) (citing

*Commonwealth v. Perez*, 845 A.2d 779, 785-787 (Pa.2004)) (internal

citations omitted).

"The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily." *Commonwealth v. Harrell*, 65 A.3d 420, 434 (Pa.Super.2013), *appeal denied*, 101 A.3d 785 (Pa.2014). "The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review." *Commonwealth v. Roberts*, 969 A.2d 594, 599 (Pa.Super.2009).

The suppression court summarized the suppression hearing evidence as follows:

> The Commonwealth called as their only witness Detective Philip Nordo[6] who testified regarding his investigation of the homicide of Clarice Douglass which occurred on April 20, 2012. Detective Nordo interviewed [Appellant] based upon information that he had received that [Appellant] had been involved in a gunfight which led to the victim's death. He was placed in an interview room at approximately 7:30 p.m. on May 9, 2012.

---

[6] The suppression court "determined Detective Nordo's testimony to be credible and consistent throughout both direct and cross-examination and no bias or prejudice was elicited which would bring any aspect of his testimony into doubt." Suppression Court Opinion, p. 5.

According to Detective Nordo, he advised [Appellant] of his *Miranda* rights and began interviewing him within an hour of his arrival. [Appellant] volunteered information about his whereabouts at the time of the incident and the names of others involved. Detective Nordo then worked on an unrelated homicide investigation and also attempted to verify the information that [Appellant] had initially provided, none of which he was able to substantiate.

Detective Nordo returned his attention back to [Appellant] at approximately 11:30 p.m. At that time, [Appellant] provided no further information to either Det. Nordo or his partner, other than stating he felt nervous. [Appellant] then stayed the night in the interview room. [Appellant] was not handcuffed and the door was not locked.

Detective Nordo and his partner, Detective Jenkins, after further investigating the homicide returned the next day to meet with [Appellant]. They again gave [Appellant] his *Miranda* rights and resumed the interview process with him in the early evening. At this point, [Appellant] voluntarily provided further information which resulted in a 15-page formal statement signed by [Appellant] on May 10, 2012. The statement was provided to the officers after [Appellant] had spent approximately 24 hours in police custody.

In his statement, [Appellant] acknowledged that he had been given and understood his constitutional rights. He also acknowledged that he had been given food, the ability to use the bathroom and had been permitted to sleep while there. [Appellant] also acknowledged that he has not been promised anything in return for or coerced by the officers in giving his statement. The detectives did inform him that if he possessed a gun, he could be charged for that crime. In regard to [Appellant's] unsubstantiated statements from May 9, 2012, [Appellant] admitted to Det. Nordo that he had not wanted to be involved and was nervous.

Once the interview was completed and the statement finalized, [Appellant] was given the opportunity to review his answers, which he did, and he then signed every page of the statement. [Appellant] also signed a non-consent form for having his interview video or audio recorded.

On cross-examination, Detective Nordo testified that the decision to hold a witness in custody who was initially untruthful

is made by the investigator, in this case him, along with the district attorney's office while other investigation is performed in order to pinpoint [a] defendant's whereabouts and actions at the time of the crime. This particular investigation took time due to the detectives' heavy workload involving multiple crimes during that time frame.

From the time of the crime occurring and the interviewing of witnesses, the detectives had received information about [Appellant's] involvement in the shooting, his name, and the house where he had been hiding at the time. Detective Nordo confirmed that there were three witnesses that provided information to the police regarding [Appellant]. Two witnesses, Michelle Richardson and April Brown, had provided written statements and the third witness was a confidential informant. Ms. Richardson and Ms. Brown both identified [Appellant] in a photograph. Further, Ms. Brown stated that [Appellant] was an associate of another victim of the shooting, however, neither woman placed [Appellant] at the scene of the crime.

The other shooting victim, Hakeem Burley, also gave a statement to police relating that he had possessed the .45 caliber handgun that was found at the scene, but he did not fire it. This statement was corroborated by a ballistics report which determined that the 21 shell casings found at the scene were from two different 9 millimeter firearms, not a .45 caliber. It was the confidential informant however, that had provided information to Officer Lai, who later, along with his partner, Officer Dougherty, found [Appellant] and brought him to the station for questioning.

Detective Nordo testified that [Appellant] was not handcuffed at any point during the interview process. While he was in the interview room for the approximately 24 hour period, he was free to exit and use the bathroom, but did have to ask permission of the officers in order to escort him to and from. Detective Nordo did take possession of [Appellant's] cellphone as it was not permitted in the interview room.

[Appellant] had not been placed under arrest on May 9, 2012 or even on the following day, as the detectives did not have sufficient evidence to charge him with homicide, despite him having implicated himself in the shooting. By 11:30 p.m. on May 9, 2012, when the detectives went home, [Appellant] had not been given any food or water that that point, as Detective

Nordo testified it would have been recorded if [Appellant] had asked for food or water. A chronology of the detention was not kept and it was not requested by the district attorney, as [Appellant] was only held for 24 hours which does not require a chronology. When Detective Nordo spoke again with [Appellant] on the evening of May 10, 2012, at no point did he indicate that [he] had been deprived of food or bathroom access. [Appellant] was also fed at that time.

Suppression Court Opinion, pp. 2-5 (record citations and footnote omitted).

Based on this evidence, the suppression court concluded that, under these circumstances "[t]he interrogation in and of itself was not overbearing, relentless or in any way coercive." Suppression Court Opinion, p. 7. Further, the suppression court elaborated:

The evidence fails to show any other factors, aside from time, for this [c]ourt to consider in order to conclude, by a preponderance of the evidence, that the statement was involuntarily coerced. [Appellant] was aware he was being questioned in regard to a shooting. He was twice given his **Miranda** warnings, which he expressly agreed to waive. His statement cannot be said to have been anything other than knowing, intelligent, and voluntary.

Suppression Court Opinion, pp. 7-8.

Our review of the record confirms the evidence supports the suppression court's factual findings. Further, the suppression court's legal conclusions drawn from those facts are correct. Accordingly, Appellant's first claim fails.

In his second claim, Appellant forwards the alternative argument that his detention by police amounted to an arrest affected without warrant or probable cause, and was therefore illegal. **See** Appellant's Brief, pp. 27-35.

Appellant argues that his statements should have been suppressed as fruit of the poisonous tree of this illegal arrest. *Id.* Appellant did not previously raise this claim in his motion to suppress or at the suppression hearing. Accordingly, it is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Colavita*, 993 A.2d 874, 891 (Pa.2010) ("[The Pennsylvania Supreme] Court has consistently held that an appellate court cannot reverse a trial court judgment on a basis that was not properly raised and preserved by the parties.").[7]

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/2015

---

[7] Appellant also failed to raise this alternative suppression theory in his Pa.R.A.P. 1925(b) statement. *See* Appellant's Pa.R.A.P. 1925(b) Statement; *see also Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa.2005) (issues not raised in 1925(b) Statements will be deemed waived).