J-S23040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CURTIS KINGWOOD, | : | |
| | : | |
| Appellant | : | No. 3567 EDA 2014 |

Appeal from the Judgment of Sentence December 12, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0002620-2013

BEFORE:  OLSON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED May 19, 2017**

Curtis Kingwood ("Kingwood") appeals from the judgment of sentence imposed following his conviction of second-degree murder, robbery, conspiracy to commit robbery, carrying a firearm in public, and possession of an instrument of crime ("PIC").[1]  We affirm.

The trial court summarized the relevant factual and procedural history as follows:

> On September 11, 2011, Christopher Lee ("Lee") was playing dice with Dontay Chestnut [] and Kenneth Perry [] on the sidewalk on the corner of Lindenwood Street and Jefferson Street.  Later that night, at approximately 7:30 p.m., Faheem Davis ("Davis") and [] Kingwood approached the men playing dice[,] and Davis pulled out a gun and demanded their money. A struggle ensued between Lee and Davis[,] during which Davis fired a single shot.  Davis and [] Kingwood then fled the scene in a jeep.  Lee sustained one gunshot to the chest[,] and was pronounced dead [] at approximately 8:10 p.m.

---

[1] **See** 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 903(c), 6108, 907(a).

On June 5, 2014, this court heard and denied Kingwood's Motion to Suppress a statement[,] and the matter was continued to trial. On July 28, 2014, Kingwood elected to exercise his right to a jury trial[,] and pled not guilty to the above[-]listed charges. On August 4, 2014[,] the jury found Kingwood guilty of [m]urder of the [s]econd [d]egree (H2), [r]obbery (F1), [c]onspiracy (F1), [carrying a firearm in public] (M1), and PIC (M1)[,] and sentencing was deferred to December 12, 2014. On December 12, 2014, this court sentenced Kingwood to the mandatory term of life imprisonment on the murder charge. He received no further penalty on the remaining charges. On December 19, 2014, this court received a Notice of Appeal[,] and on February 10, 2015, upon completion of the notes of testimony, Kingwood was served an Order directing him to file a concise statement of the matters complained of on appeal[,] pursuant to Pa.R.A.P. 1925(b). On May 13, 2015, this court received Kingwood's [Pa.R.A.P.] 1925(b) response[.]

Trial Court Opinion, 12/15/15, at 1-2, 3 (paragraphs reordered, some formatting omitted, footnote omitted).

On appeal, Kingwood raises the following issue for our review: "Did the trial court err by denying [Kingwood's] Motion to suppress his statement to police?" Brief for Appellant at 3 (some capitalization omitted).

Our standard of review of a denial of suppression is whether the record supports the [suppression] court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 27 A.3d 1042*,* 1045 (Pa. Super. 2011) (*en banc*) (citation omitted).

Kingwood contends that the suppression court erred by denying his pretrial Motion to suppress the inculpatory statements that he made to police while being detained. *Id*. at 13. Kingwood asserts that "the Commonwealth failed to establish that [Kingwood's] statement[s] w[ere] voluntary, given that he was kept in the same room[,] where he had no place to sleep for over forty hours[,] before he finally consented to give a statement." *Id*. at 22. Kingwood claims that "the delay was unjustified and prejudicial because it led directly to [Kingwood's] inability to refuse the detective's insistence that he agree to an interview and make a statement." *Id*. Kingwood argues that the Commonwealth presented no evidence demonstrating why it was necessary to leave Kingwood alone for that period of time, in an interview room that did not have a bed, or why a detective other than Detective [Omar] Jenkins [("Detective Jenkins")] could not have interviewed Kingwood. *Id*. Kingwood contends that, during the 40 hours in which he was detained, he was not permitted to communicate with family members and was denied cigarettes, which also compromised his ability to resist confessing to police. *Id*. at 24, 25. Kingwood asserts that Detective Jenkins was confrontational with Kingwood, called him a liar, and interviewed him several times. *Id*. at 25. Kingwood claims that "his will was overborne and [] his statement should have been suppressed because it was not freely and voluntarily given." *Id*. Finally, Kingwood argues that

"the delay was unnecessary and that the length of the delay was presumptively coercive …." *Id*. at 27.[2]

In the present case, the suppression court conducted a hearing regarding the circumstances surrounding Kingwood's detention and subsequent confession to police. The Commonwealth presented the testimony of Detective Jenkins. Kingwood presented no witnesses. The uncontracted evidence presented by the Commonwealth includes the following.

On September 11, 2011, the date of the shooting, Detective Jenkins was assigned to lead the investigation of the murder of Lee. N.T. 6/5/14, at 11. At 12:30 am on the morning of November 15, 2012, Kingwood was brought by police to the homicide unit for questioning in relation to Lee's murder. *Id*. at 22. Because it was so late, Kingwood was placed in an interview room, because Detective Jenkins was at home. *Id*. at 23. The interview room is a rectangular room (approximately eight feet by twelve

---

[2] In support of his argument, Kingwood relies on **Commonwealth v. Davenport**, 370 A2d 301 (Pa. 1977), and **Commonwealth v. Duncan**, 525 A.2d 1177 (Pa. 1987), for the proposition that the length of his detention, without more, renders his confession involuntary. **See** Brief for Appellant at 25-26. Notably, between 1977 and 2004, our Supreme Court adhered to a bright-line rule, under which any statement given to police more than six hours after arrest, and before arraignment, was *per se* inadmissible. **See Davenport**, 370 A.2d at 306. However, in **Commonwealth v. Perez**, 845 A.2d 779 (Pa. 2004), our Supreme Court determined that the *per se* rule was not appropriate, and reverted to a totality of the circumstances test, which we apply in this case. **Perez**, 845 A.3d at 785-87.

feet), which locks from the outside, and has a rectangular table and a plastic chair, both of which are bolted to the floor. *Id*. at 31-32.

Later that morning, at approximately 10:00 a.m., Detective Jenkins met briefly with Kingwood, and explained to Kingwood that Detective Jenkins had court obligations that day, and would speak with him after court. *Id*. at 23-24. At that time, Kingwood was permitted to use the restroom, and provided with food to eat. *Id*. at 24. Detective Jenkins returned from court at approximately 4:00 p.m. or 5:00 p.m., and reintroduced himself to Kingwood. *Id*. at 25. At that time, Detective Jenkins provided verbal *Miranda*[3] warnings to Kingwood. *Id*. Kingwood did not appear to be sick, ill or injured, and acted coherently. *Id*. at 26. Kingwood indicated to Detective Jenkins that he understood his rights, and did not request an attorney or to remain silent. *Id*. at 26, 27. Thereafter, they began to talk about the shooting of Lee. *Id*. at 27.

Kingwood initially denied any knowledge of the case, or the gun that had been used in the shooting of Lee. *Id*. at 28. Detective Jenkins then briefly ended the interview to review his case notes. *Id*. When Detective Jenkins returned at approximately 6:30 p.m., he confronted Kingwood with case information, and Kingwood then began "to give a story as to the facts of the case." *Id*. Specifically, Kingwood identified "Chaney Hasan" as the individual who had given him the gun. *Id*. at 29. Kingwood requested a

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

cigarette, but Detective Jenkins denied his request because Detective Jenkins is a non-smoker, and the interview room is small. *Id*. at 30. Kingwood also requested to use the restroom, which request was granted. *Id*. Detective Jenkins left the interview room and attempted to research "Chaney Hasan," and determined that no one by that name lived in the area, or had come up in the investigation. *Id*. At approximately 10:00 p.m., Detective Jenkins returned to the interview room and told Kingwood that he had been unable to substantiate the information that Kingwood had provided. *Id*. at 30-31. At that time, Kingwood requested something to drink, which request was granted. *Id*. at 30. Kingwood was left in the interview room for the remainder of the night. *Id*. During the night, Kingwood was observed sleeping in the interview room. *Id*. at 32.

At approximately 8:15 a.m. on the morning of November 16, 2012, Detective Jenkins returned to the interview room with food for Kingwood to eat. *Id*. Kingwood was also permitted to use the restroom. *Id*. at 33. Detective Jenkins asked Kingwood if, after resting overnight, he had any truthful information to provide, as the information he had provided thus far had not been substantiated. *Id*. at 32-33. Kingwood declined to provide further information, and Detective Jenkins thereafter left for court. *Id*. at 33. Detective Jenkins returned from court at approximately 11:45 a.m., and confronted Kingwood by telling him that "the story about Chaney Hasan was totally false." *Id*. at 33-34. Kingwood then began to provide further

information to Detective Jenkins about the murder, including the exact location of the shooting. *Id*. at 34. Kingwood explained that he was picked up by "Heem" and another male in North Philadelphia, and that they drove out to West Philadelphia, where the shooting had occurred. *Id*. at 35. Kingwood then began to talk about the incident. *Id*. Detective Jenkins thereafter left the interview room to verify the information that Kingwood had provided, and to determine who "Heem" was. *Id*. at 36. At approximately 2:45 p.m., Kingwood was given something to eat and drink. *Id*. at 38. At 4:45 p.m., Kingwood indicated to Detective Jenkins that he was ready to give a full account of Lee's murder, and thereafter admitted to his involvement, and provided "names, dates, locations and[] factual information on what occurred." *Id*. at 38-39. Detective Jenkins asked Kingwood if he would provide a formal written interview, and indicated that Kingwood had time to think about it. *Id*. at 39.

At approximately 7:00 p.m., Kingwood consented to a formal interview by police, which would be transcribed and provided to the district attorney. *Id*. at 39-40. King was provided with written *Miranda* warnings, which he waived by written acknowledgment. *Id*. at 40-42. Thereafter, Kingwood provided a formal accounting of the incident, and his involvement therein. *Id*. at 45-52. According to Detective Jenkins, no one at the police station had threatened or forced Kingwood to give a statement to police. *Id*. at 55. Kingwood had prior arrests, and was precluded from lawfully carrying a

firearm. *Id*. at 20. Kingwood did not present any evidence to the suppression court regarding his age, education, or intelligence.

Here, there is no question that Kingwood was detained for more than 40 hours. However, the duration of the detention is not controlling. **See Perez, supra**. Rather, the question is whether, under the totality of the circumstances, the confession was voluntary.

> When a court is called upon to determine whether a confession is voluntary and, hence, admissible at trial, it examines the totality of the circumstances surrounding the confession to ascertain whether it is the product of an essentially free and unconstrained choice by its maker. In making this inquiry, a court is not concerned with the issue of whether the substance of the confession is true. Rather, a court is constrained to examine only whether an individual's confession was the product of coercion, duress, or the use of other measures by interrogators deliberately calculated to overcome his or her free will.

**Commonwealth v. Smith**, 85 A.3d 530, 537-38 (Pa. Super. 2014).

As our Supreme Court has explained,

> [t]he mere fact that there is some passage of time between when an accused is arrested and when he or she gives an inculpatory statement does not constitute grounds for suppression of the statement. Numerous factors should be considered under a totality of the circumstances test to determine whether a statement was freely and voluntarily made: the means and duration of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and

intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

***Commonwealth v. Martin***, 101 A.3d 706, 724-25 (Pa. 2014) (citing ***Perez***, 845 A.2d at 785-87 (internal citations omitted)). Also relevant to the totality of the circumstances inquiry is whether the defendant provided deceptive and misleading statements to police during questioning. ***See Commonwealth v. Johnson***, 727 A.2d 1089, 1099 (Pa. 1999) (stating that, a defendant who has the presence of mind to fabricate a story when being questioned by police, "seriously undermines" a subsequent claim that his statements were involuntary.).

"The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily." ***Commonwealth v. Harrell***, 65 A.3d 420, 434 (Pa. Super. 2013). "The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review." ***Commonwealth v. Roberts***, 969 A.2d 594, 599 (Pa. Super. 2009). However, the underlying factual and credibility determinations pertaining to the circumstances are owed deference and must merely be supported by the record. ***Commonwealth v. Nester***, 709 A.2d 879, 881 (Pa. 1998).

Based on our review, we discern nothing from the suppression court record that would establish, under the totality of the circumstances, that Kingwood's statements were in any way coerced or otherwise improperly

obtained. Taking note of the factors set forth in **Perez** and other cases, we conclude that Kingwood's detention prior to his confession, although prolonged, was not unduly long under the particular circumstances of this case. Although Kingwood had been detained for more than 15 hours before he was initially interviewed, the delay was due to (1) the fact that Kingwood was brought in for questioning shortly after midnight, when the lead detective on the case, Detective Jenkins, was at home; and (2) Detective Jenkins's preexisting court obligations, which prevented him from initiating the interview with Kingwood until 4:00 p.m. or 5:00 p.m. on November 15, 2012. Although Kingwood contends that another detective should have interviewed him, the Commonwealth presented evidence that Detective Jenkins had been the lead detective on the case for more than one year at the time of Kingwood's detention. **See Perez**, 845 A.2d at 788-89 (rejecting appellant's argument that another detective could have interviewed him, and noting that "[t]he detective explained at the suppression hearing that[,] because he was the detective assigned to the case, he alone was responsible for interviewing … appellant ….") Questioning was also delayed for three hours on November 16, 2012, due to Detective Jenkins's additional preexisting court obligations. Nothing in the record indicates that these delays were aimed at overcoming Kingwood's will, or that he was subjected to coercive tactics. **See id**. at 789. Rather, questioning was initiated by Detective Jenkins "as soon as feasible." **See id**.

We further conclude that the questioning was not unduly repetitious, as Kingwood initially provided false information to Detective Jenkins, leading to further delays and further questioning when Detective Jenkins was unable to substantiate the false information. Notably, Kingwood's election to provide false information to detective Jenkins "seriously undermines" his argument that his confession was not voluntary. *See Johnson*, 727 A.2d at 1099.

Additionally, the record reflects that Detective Jenkins's questioning was not accompanied by physical abuse or threats thereof, nor is there any evidence to suggest that Kingwood was detained for the purpose of forcing a confession. Indeed, Kingwood was repeatedly advised of his constitutional rights. The attitude exhibited by Detective Jenkins during the interrogation was not offensive to constitutional norms. Kingwood was not injured, ill, drugged, or intoxicated. Kingwood was not deprived of food, drink, sleep, or medical attention.[4] Kingwood did not present any suppression hearing

---

[4] Although Kingwood was kept in an interview room without a bed, he cites no authority establishing that this circumstance constituted a legal impropriety, let alone a constitutional violation. *See Commonwealth v. Martin*, 101 A.3d at 727. Additionally, although Kingwood claims that he was deprived of cigarettes, the record indicates that he made only one request for cigarettes, while he was being interviewed by Detective Jenkins, which request was denied because Detective Jenkins is a non-smoker, and the interview room was small. *See* N.T., 6/5/14, at 30. Based on the record before us, we cannot conclude that the denial of Kingwood's solitary request for a cigarette, while being interviewed by a non-smoker in a confined space, was a tactic designed to coerce a confession from Kingwood. *See Smith*, 85 A.3d at 538.

evidence concerning his age, education, and intelligence.[5] However, Kingwood had prior arrests, and was precluded from carrying a firearm.[6]

In *Bryant*, the appellant argued that his inculpatory statement was involuntary, and thus should not have been admitted into evidence because, prior to giving the statement, he had been in custody for approximately 34 hours, kept in isolation, with little to eat or drink and no place to sleep, and subjected to repeated interrogation to convince him that he would not leave the police station until he confessed. *Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013). In rejecting appellant's argument, the *Bryant* Court noted that

> [a]lthough [a]ppellant was held for a lengthy period of time prior to giving his inculpatory statement, part of the reason for this was the enormous amount of evidence potentially relevant to the murders that the detectives were continuing to analyze. While [a]ppellant was in custody, he was given food and drink, he was allowed to use a bathroom, he was given the opportunity to sleep and did in fact sleep. No psychological pressure was placed on [a]ppellant during his time in custody. Prior to giving each of his statements, [a]ppellant had been read his *Miranda* rights and had signed off on them.

*Bryant*, 67 A.3d at 725.

---

[5] Nevertheless, from the record, we discern that Kingwood was 23 years old at the time of his detention.

[6] Additionally, Kingwood failed to present any evidence to the suppression court regarding his claims that he was not permitted to speak to family members, or that Detective Jenkins had called him a "liar." Accordingly, we decline to consider these claims, as they are unsupported by the record before us.

As in ***Bryant***, Kingwood was given food and drink, allowed to use the bathroom, was given the opportunity to sleep and did, in fact, sleep. No psychological pressure was placed on Kingwood during his time in custody. Prior to giving each of his statements, he was provided with ***Miranda*** warnings, and waived them. Although Kingwood was held for a lengthy period of time prior to giving his inculpatory statements, the delay was, in part, caused by preexisting court obligations of Detective Jenkins, the lead detective on the case, as well as Kingwood's decision to provide false information to Detective Jenkins, resulting in wasted time spent researching the false information. Moreover, the duration of the interrogation was only one of many factors for the trial court to consider. The trial court correctly determined that the length of time was justified in light of the ongoing criminal investigation, rather than a strategy to force a confession from Kingwood. ***See*** Trial Court Opinion, 12/15/15, at 9-10. Mere passage of time was not enough to render Kingwood's statement involuntary in light of an examination of the other relevant factors at play. ***See Bryant***, 67 A.3d at 725.

Thus, based on the foregoing evidence and our standard of review, we discern no abuse of discretion or error of law by the trial court in finding that Kingwood's statement to police was knowing, voluntary, and intelligent. Accordingly, we affirm the trial court's suppression Order, as well as Kingwood's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2017