J-S36024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
                                            :

            v.                        :

NICO SCOTT                       :

              Appellant     :    No. 2056 MDA 2018

Appeal from the Judgment of Sentence Entered November 20, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001753-2017

BEFORE: PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY SHOGAN, J.:          **FILED NOVEMBER 13, 2019**

Appellant, Nico Scott, appeals from the judgment of sentence entered following her convictions of two counts of possession of a controlled substance and one count of possession of drug paraphernalia.[1] We affirm.

In addressing Appellant's omnibus pretrial motion, the trial court offered the following background of this case:

> On May 31, 2017, the Old Lycoming Township police executed a search warrant [of Appellant's residence] at 510 Dylan Drive, Cogan Station, Hepburn Township in Lycoming County Pennsylvania. The police were investigating the report of a possible drug related homicide. While [police were] executing the search warrant, [Appellant] was interviewed. She confirmed that the various controlled substances found within her residence were hers. Among the items were various quantities of pills, marijuana, crystal methamphetamine along with electronic devices, and U.S. currency. The controlled substances and pills were all contained

---

[1] 35 P.S. §§ 780-113 (A)(16) and (30), respectively.

---

\*   Retired Senior Judge assigned to the Superior Court.

in various packaging materials and found within a locked safe located in [Appellant's] bedroom.

While being interviewed by the police, [Appellant] admitted that she used the marijuana and methamphetamine for pain. She also volunteered that "although it looks like she sells drugs she was only stockpiling them for her own personal use." As a result of the items found in the search, police charged [Appellant] with two counts of Possession of a Controlled Substance for the methamphetamine and marijuana; and, one count of Possession of Drug Paraphernalia.

[Appellant] alleges that the items seized from her home are a product of a violation of her constitutional rights under both the U.S. and Pennsylvania Constitutions since the reason for their presence there (the investigation of the homicide) no longer existed and they had no reason to suspect drugs were present in the house.

The parties agreed that the facts were not in dispute. Detective Christopher Kriner of the Old Lycoming Township Police Department went to [Appellant's] residence on May 31, 2017, to locate the cremains of an individual they believed had been killed and burned by [Appellant]. While the search warrant was being executed, [Appellant] was placed in handcuffs and relocated to the back of a police cruiser to await the results of the search. The warrant was specifically issued to "search the residence for evidence related to the death/disappearance of an unknown Hispanic male." Commonwealth's exhibit 2, Search warrant issued 5/31/2017.

While the home was being searched and [Appellant was] still in the cruiser but no longer in handcuffs, [Detective] Kriner [read] her Miranda[2] warnings and she agree[d] to talk with him. [Appellant made] incriminating statements regarding drugs which could be found inside her house. She talk[ed] about the fact that she uses marijuana and methamphetamine for pain that she suffers in her stomach. She further state[d] that she has been stockpiling the drugs because she doesn't use them all of the time. She also mention[ed] a large quantity of cash that she has

_____

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

because she recently collected rents so it look[ed] like she might be selling drugs.

Police then receive[d] confirmation that the person believed to be deceased [was] still quite alive. However[,] as a result of the search, police discover[ed] a safe in [Appellant's] bedroom which [was] locked and bolted to the floor. While [Appellant was] still located in the cruiser and knowing the information she ha[d] volunteered to them about the drugs in the house, the police request[ed] her consent to search the safe. [Detective] Kriner advise[d] her that she [did not] have to give them consent, but they would need to get a search warrant if she [chose] not to consent. She then provide[d] the police with the key to the safe so they [could] open it.

Trial Court Order and Opinion, 5/4/18, at 1-3 (footnotes omitted).

On September 15, 2017, Appellant was charged with the above-stated drug offenses. She filed an omnibus pretrial motion seeking to suppress evidence on December 26, 2017. On March 19, 2018, the trial court held a suppression hearing and filed an opinion and order denying the motion on May 4, 2018. A nonjury trial was held on September 21, 2018, following which Appellant was convicted of all charges. On November 20, 2018, the trial court sentenced Appellant to serve two consecutive terms of six months of probation for the possession of controlled substance convictions and fined her $100 for the possession of drug paraphernalia conviction. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Whether the trial court erred, as a matter of law, in denying Appellant's motion to suppress all statements made during the uncounseled and custodial interrogation by law enforcement in that said statements were not preceded by a knowing, intelligent, and voluntary waiver of Appellant's Miranda rights?

II. Whether the trial court erred, as a matter of law, in denying Appellant's motion to suppress all items seized from her safe during the search of Appellant's residence, as they were the direct result of an unlawful detention and consent was not given voluntarily?

Appellant's Brief at 4 (full capitalization omitted).

Appellant first argues that the trial court erred in denying her motion to suppress statements made to police. Appellant's Brief at 13-17. Appellant claims that the statements, made during the execution of a search warrant, were not preceded by a valid waiver of her *Miranda* rights. She contends that her waiver was not voluntary under the circumstances of her detention. *Id*. at 14.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super.

- 4 -

2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

Further, we are aware that Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H). At a suppression hearing, the Commonwealth has the burden of "establish[ing] by a preponderance of the evidence that the evidence was properly obtained." *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011) (quoting *Commonwealth v. Culp*, 548 A.2d 578, 581 (Pa. Super. 1988)).

In *Miranda*, the Supreme Court set forth safeguards to protect a person's rights under the Fifth Amendment to the United States Constitution, which provides that a criminal defendant cannot be compelled to be a witness or give evidence against himself. *Miranda*, 384 U.S. at 461. The Court held that police officers are required to inform a suspect prior to questioning that he has the right to remain silent, that any statement made may be used against him, and that he has the right to an attorney. *Id.*, at 444. "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id*. The Pennsylvania Supreme Court has reiterated that for a waiver of these rights to be valid, the defendant

- 5 -

must be adequately apprised of and understand his rights and the consequences of waiving those rights, and must not be threatened, forced, or coerced to waive his rights in any way. ***Commonwealth v. DeJesus***, 787 A.2d 394, 402 (Pa. 2001). "It is the Commonwealth's burden to establish whether [the accused] knowingly and voluntarily waived his ***Miranda*** rights. In order to do so, the Commonwealth must demonstrate that the proper warnings were given, and that the accused manifested an understanding of these warnings." ***Eichinger***, 915 A.2d at 1135-1136.

In considering whether a defendant has validly waived his ***Miranda*** rights, the trial court engages in a two-pronged analysis:

> (1) whether the waiver was voluntary, in the sense that [the] defendant's choice was not the end result of governmental pressure[;] and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice.

***Commonwealth v. Mitchell***, 902 A.2d 430, 451 (Pa. 2006).

"The determination of whether a confession is voluntary is a conclusion of law, and as such, is subject to plenary review." ***Commonwealth v. Roberts***, 969 A.2d 594, 599 (Pa. Super. 2009). In evaluating the voluntariness of a confession, this Court looks at the totality of the circumstances to determine whether, due to police conduct, the defendant's "will has been overborne and his capacity for self-determination critically impaired." ***Id***. at 598-599 (citation omitted). Thus, in order to determine if a proper waiver of ***Miranda*** rights has occurred, "[w]e employ a totality of

circumstances test in reviewing the waiver. We are bound also by the suppression court's findings of fact if they are supported by competent evidence." ***Commonwealth v. Logan***, 549 A.2d 531, 537 (Pa. 1988).

In concluding that Appellant voluntarily waived her ***Miranda*** rights prior to speaking to the police, the trial court offered the following:

> The [trial c]ourt listened to the audio recording of [Detective] Kriner's interview with [Appellant] and is satisfied that [Appellant] made a knowing and voluntary waiver of her right to remain silent. Although [Appellant] was upset, there was nothing in her responses or the manner in which [Detective] Kriner was talking with her that indicated her waiver was not knowing, intelligent or voluntary. Despite the fact that she was sitting in [Detective] Kriner's vehicle, the conditions appeared to be free of coercion. [Detective] Kriner's attitude toward [Appellant] was professional, not condescending or demanding.
>
> Although the [trial c]ourt could not see [Appellant] in her encounter with [Detective] Kriner, he attempted to make her comfortable by not only taking the handcuffs off of her, but starting the car so she would be warm. Although she fluctuated between being emotional and calm, [Detective] Kriner was able to get [Appellant] to focus on the questions at hand to insure that she understood what she was doing, and that she intended to speak with him.

Trial Court Order and Opinion, 5/4/18, at 4-5.

Our review of the record, including the fifty-eight minute audio recording of Appellant's interaction with Detective Kriner, reflects that Appellant voluntarily waived her ***Miranda*** rights. The recording establishes that, at the outset of their interaction, Detective Kriner accurately read Appellant her

*Miranda* rights. Defendant's Exhibit 1, Audio Recording at 2:15-2:45.[3] Appellant then acknowledged that she wanted to speak with Detective Kriner. *Id*. at 3:25-3:35. Further, Detective Kriner explained to Appellant the written *Miranda* waiver form and reiterated that Appellant had the choice to refuse to answer any questions, after which Appellant again acknowledged her willingness to waive her *Miranda* rights and to speak to police without an attorney present. *Id*. 5:00-5:50. Similar to the trial court's conclusion, our review reflects that Appellant was not threatened, forced, or coerced by the police to compel her to waive her rights. *DeJesus*, 787 A.2d at 402. Contrary to Appellant's claim, Appellant sounded completely cognizant and in control at the time she waiver her *Miranda* rights, such that we conclude her waiver was knowing and intelligent.

The record establishes that proper *Miranda* warnings were given and Appellant manifested a complete understanding of those warnings. *Eichinger*, 915 A.2d at 1135-1136. Based on the foregoing and our review of the suppression hearing transcript and the audio recording, we conclude that Appellant's waiver of her *Miranda* rights and subsequent statements were knowing and voluntary and that the Commonwealth proved "by a preponderance of the evidence that the evidence was properly obtained."

_____

[3] Throughout this memorandum, the times cited for the audio recording reflect the minute and second mark as they appear on the DVD submitted as Defendant's Exhibit 1.

*Galendez*, 27 A.3d at 1046. Therefore, it is our determination that the record supports the trial court's factual findings and that the trial court did not err in denying Appellant's motion to suppress her statements.

Appellant next argues that the trial court erred in denying her motion to suppress the physical evidence seized from her safe. Appellant's Brief at 18-30. Appellant asserts that her consent to the search of the safe was not valid. Initially, Appellant claims that the consent resulted from an illegal detention. *Id*. at 20-27. In addition, she contends that her consent to the search was not free and unconstrained, but resulted from coercion and duress. *Id*. at 27-30.

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Schneckloth v. Bustamonte*, 412 U.S. 218, 236, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *Commonwealth v. Blair*, 394 Pa. Super. 207, 575 A.2d 593, 596 (Pa. Super. 1990).

*Commonwealth v. By*, 812 A.2d 1250, 1254 (Pa. Super. 2002).

To secure the right of citizens to be free from intrusions by police, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000).

It is undisputed that:

> [s]tate case law recognizes three categories of interaction between police officers and citizens, which include: (1) a mere

encounter, or request for information, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or to respond; (2) an investigative detention, which must be supported by reasonable suspicion as it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest; and (3) arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Acosta*, 815 A.2d 1078, 1082 (Pa. Super. 2003) (*en banc*). "The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007).

Additionally, we have long stated that "there is no threshold of suspicion needed for a request to search; consent to a search obviates the need for any level of suspicion on the part of the police." *Commonwealth v. Shelly*, 703 A.2d 499, 502 (Pa. Super. 1997) (citing *Florida v. Bostick*, 501 U.S. 429 (1991)). It is a well-established standard that a warrant is not required when a person, with authority to do so, consents to a search. *Commonwealth v. Reid*, 811 A.2d 530 (Pa. 2002). "To establish a valid consensual search, the prosecution must first prove that the consent was given during a legal police interaction, or if the consent was given during an illegal seizure, that it was not a result of the illegal seizure; and second, that the consent was given voluntarily." *Id*. at 544.

To establish the constitutionality of a consent to search:

the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. As noted, while knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account.

***Commonwealth v. Strickler***, 757 A.2d 884, 901 (Pa. 2000) (citations omitted).

We have indicated that the following factors are pertinent to a determination of whether consent to search is voluntarily given:

1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including the degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

***Commonwealth v. Powell***, 994 A.2d 1096, 1102 (Pa. Super. 2010) (quoting ***Commonwealth v. Kemp***, 961 A.2d 1247, 1261 (Pa. Super. 2008) (*en banc*)). Again, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013).

In the first portion of this issue, Appellant argues that her consent to the search was the result of an illegal detention. Appellant's Brief at 20-27.

Appellant asserts that, although she was lawfully detained during the execution of a search warrant to investigate a potential homicide, once the police concluded that the purpose of the search warrant had ended she was then unlawfully detained. *Id*. at 21-22. Appellant contends, "Detective Kriner, despite no longer operating pursuant to a valid warrant, continued to hold [Appellant] in custody and question her about the no longer unidentified Hispanic male [believed to have been murdered], who was quite alive." *Id*. at 25. Appellant claims that she "was held in custody and interrogated absent a valid warrant or any degree of justifying suspicion on the part of law enforcement." *Id*. at 27.

Our review confirms that the police arrived at Appellant's residence on May 31, 2017, with a valid search warrant.[4] "[T]he purpose and scope of the initial warrant was to search for 'any and all evidence related to the death/disappearance of an as yet unidentified Hispanic male.'" Appellant's Brief at 21 (citing Search Warrant 5/31/17). As discussed above, while Appellant was detained she validly waived her *Miranda* rights and spoke with police. During the interrogation process, Appellant admitted to using methamphetamine. Defendant's Exhibit 1, Audio Recording at 12:50-13:30. Thereafter, Appellant admitted to having drugs in the house. *Id*. at 14:20-

_____

[4] Appellant states, "Appellant accepts that the warrant under which the initial search and seizure was executed was lawful, that it was supported by probable cause and described with sufficient particularity the place to be searched and persons or things to be seized." Appellant's Brief at 20-21.

14:45. After further discussion, Detective Kriner stopped the interrogation and left Appellant's presence for slightly more than three minutes. *Id*. at 17:00-20:30. Upon returning, Detective Kriner informed Appellant that police confirmed that the purported victim was alive. *Id*. at 21:00. Detective Kriner continued questioning Appellant regarding her connection with the purported victim and his drug business. *Id*. at 24:30-27:00.

These facts establish that, during the legal police detention while the valid search warrant was being executed, Appellant admitted to using illegal narcotics and that there was contraband present in her residence. We conclude that these facts, in the knowledge of police, rose to the level of probable cause because they are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed. *Hernandez*, 935 A.2d at 1284. Accordingly, Detective Kriner's continued interrogation of Appellant regarding her connection with the purported victim and his drug business was a legal police interaction. Hence, Appellant's consent to search the safe in her residence was given during a legal police interaction, and her contrary claim lacks merit.

In the second portion of this issue, Appellant argues that the consent to search her safe was not a free and unconstrained voluntary choice. Appellant's Brief at 27-30. Appellant claims that under the circumstances, her consent was the result of duress and coercion. *Id*. at 28-30.

In addressing this claim, the trial court offered the following brief discussion:

> [Appellant's] consent was not a product of duress. [Detective] Kriner was calm and patient with [Appellant]; he continued to speak with her trying to keep focused to establish for the recording that [Appellant] understood what was being asked of her. Although she was not advised that she was free to leave, she was advised of her right to refuse consent. The [trial c]ourt finds that there was nothing inherently coercive about the circumstances that evening. [Appellant's] consent to search was voluntarily made.

Trial Court Order and Opinion, 5/4/18, at 5. We agree.

Because Appellant gave consent to the search during a legal police interaction, we need address only whether the consent was voluntary, and do so considering the relevant factors set forth in **Powell**. **Powell**, 994 A.2d at 1102. Here, our review of the audio recording reflects that the police activity preceding the consent was legitimate, no verbal or physical force was used, one police officer was involved in discussion and interrogation of Appellant while the search warrant was being executed. Furthermore, Detective Kriner's demeanor was kind and courteous. Thus, we cannot conclude that there were any police excesses. Although Appellant can be heard crying at various times on the fifty-eight minute audio recording, there was no evidence that Appellant was anything other than a competent adult at the time she provided the police detective with the requested information and consent to search her safe for contraband. Furthermore, although the entire interaction occurred in the back of the police vehicle and Appellant was not informed that she was

- 14 -

free to leave, our review reveals no duress or coercion on the part of the police in securing the verbal and written consent of Appellant to search the safe. The record supports the trial court's determination with regard to the evidence seized. Hence, having concluded that Appellant's consent to the search of the safe was voluntary, we conclude that Appellant's contrary claim with regard to the suppression order lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2019