**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Rhanel ROBERTS, Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 9, 2009.

Filed March 31, 2009.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, Commonwealth, appellant.

Bruce J. Wolf, Philadelphia and Robert F. Datner, Lansdowne, for appellee.

BEFORE: FORD ELLIOTT, P.J., ALLEN, and FREEDBERG, JJ.

OPINION BY FREEDBERG, J.:

¶ 1 The Commonwealth appeals from the order entered on February 1, 2008, which granted the motion to suppress evidence filed by Appellee Rhanel Roberts.[1] After review, we reverse and remand.

¶ 2 The relevant facts and procedural history, which are taken from the January 30, 2008 through February 1, 2008 suppression hearing, are as follows. On January 18, 2005, Detective Harry Young of the Philadelphia Police Department was asked to speak to two adult brothers regarding

1. The Commonwealth may take an appeal of right from an order that does not end the entire case if the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution. Pa.R.A.P. 311(d); *Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 536, n. 2 (2001). The Commonwealth has filed such a certification in this case.

their allegations of sexual abuse by Appellee, which occurred some twenty years previously. After obtaining statements from the men, Detective Young advised them he believed that prosecution was not possible, because the statute of limitations period had passed, but stated that he would give the information to the Philadelphia District Attorney's office and would speak with police in Florida, where the Appellee resided.

¶ 3 Concerned about the possibility that the Appellee might be abusing children in Florida, Detective Young contacted Detective Lumpkin of the Port Saint Lucie Police Department in the first week of May 2005. At Detective Lumpkin's request, on May 4, 2005, Detective Young faxed Detective Lumpkin copies of the statements taken on January 18, 2005. Detective Young also informed Detective Lumpkin that, based on information received from the Philadelphia assistant district attorney assigned to the case, he did not believe that the Commonwealth would be able to prosecute Appellee because the statute of limitations period had passed.

¶ 4 On May 20, 2005, Detective Lumpkin, along with Sergeant Breiske, after several unsuccessful attempts to contact Appellee, spoke with him in his home. At that time, both Detective Lumpkin and Sergeant Breiske were not in uniform and drove an unmarked car; however, they did carry their weapons. The detectives interviewed Appellee in his living room. They informed Appellee that two men had accused him of molesting them and read him portions of one of the men's statement. At some point during the interview, Detective Lumpkin informed Appellee that the Commonwealth of Pennsylvania was not going to prosecute him because of the statute of limitations issue.[2] Following reading of the alleged victim's statement, Appellee admitted that the allegations were true.[3] At some point later, Appellee mentioned that he was currently employed at an elementary school. Concerned about possible crimes occurring in Florida, Detective Lumpkin read Appellee his constitutional rights,[4] and Appellee stated that he wished to speak with an attorney. Accordingly, the detectives concluded the interview and left.[5]

---

2. The issue of when Detective Lumpkin made that statement was hotly contested. During his initial testimony, Detective Lumpkin stated that he could not remember when he told Appellee that Pennsylvania was not going to prosecute him. N.T. 1/30/08 at 100. During his testimony, Sergeant Breiske, who had received specialized training in interview techniques, also stated that he could not remember when the statement was made. However, he stated that, based upon their usual pattern and practice of working and based upon his specialized interview training, he believed that Detective Lumpkin did not bring up the prosecution issue until after Appellee confessed. N.T. 1/31/08 at 36–45. When recalled, Detective Lumpkin confirmed Sergeant Breiske's statement that their usual practice would have been not to mention any issue with respect to prosecution until after a suspect had given a statement. N.T. 1/31/08 at 76.

3. Detective Lumpkin had attempted to record the interview, but his voice recorder malfunctioned.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. Following the interview, the detectives unsuccessfully attempted to obtain a warrant to search Appellee's residence. They also spoke with officials at the elementary school where Appellee worked and ascertained that the school had received complaints about Appellee giving inappropriate gifts to children. Later that day, the detectives returned and spoke with both Appellee and his wife. During that second interview, Appellee again made certain admissions. The Commonwealth agrees that those statements are not admissible.

¶ 5 Both detectives testified that they did not threaten Appellee or use any force against him. They noted that Appellee never asked them to leave and was calm and cooperative during the interview. They also agreed that Appellee did not appear to be under the influence of any drugs or alcohol. Appellee did not testify at the hearing and did not present any evidence.

¶ 6 On May 25, 2005, the Philadelphia District Attorney's Office concluded that the initial belief that the statute of limitations period had run was erroneous. Based on the belief that the statute was tolled by a combination of one amendment to the statute of limitations concerning crimes against minors,[6] a second amendment to the statute of limitations concerning Appellee's public employment,[7] and his absence from the jurisdiction,[8] the Commonwealth filed charges against Appellee on December 18, 2006.[9]

¶ 7 Appellee moved to suppress his statement. Following a three-day suppression hearing, the trial court disagreed with the Appellee's contention that his constitutional rights had been violated pursuant to *Miranda*, finding that he was not in custody at the time he made the confession. However, while finding that Detective Lumpkin's statement that Appellee would not be prosecuted for the Philadelphia crimes because the statute of limitations period had run had been made in good faith, the trial court concluded that the statement rendered Appellee's confession involuntary.[10]

¶ 8 The Commonwealth filed a timely notice of appeal. The trial court ordered it to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Accordingly, the Commonwealth filed a 1925(b) statement.

¶ 9 On appeal, the Commonwealth raises the following issue for our review:

> Was the defendant's confession that he sexually molested several children voluntary notwithstanding that detectives—who interviewed him at his home for a brief period, and did not exhibit any force or make any threats—mistakenly told him that the statute of limitations for his crimes had expired?

Appellant's Brief at 2.[11]

¶ 10 In assessing the Commonwealth's claim, we must first resolve whether the

---

6. The 1985 amendment to 42 Pa. Cons.Stat. Ann. § 5554(3) tolled the statute of limitations for any crimes involving injuries to a child by a person responsible for the child's welfare until the child's 18th birthday. 42 Pa. Cons. Stat. Ann. § 5554(3) as amended by P.L. 193, No. 49 § (1985).

7. Appellee worked as a fireman while living in Philadelphia. The 1991 amendment to 42 Pa. Cons.Stat. Ann. § 5552(c) allows for prosecution of crimes by public officials, notwithstanding the statute of limitations, so long as the individual is so employed or within 5 years of his departure from public employment. 42 Pa. Cons.Stat. Ann. § 5552(c)(2) and (3) as amended by 19 P.L. 1341, No. 208 § 1 (1991).

8. The statute of limitations is tolled during periods when the accused is continuously absent from the Commonwealth. 42 Pa. Cons. Stat. Ann. § 5554(1).

9. The Commonwealth's assessment of whether the statute of limitations was tolled is not currently before the Court.

10. The trial court never definitively ruled on whether the statement had been made prior to or after Appellee's confession; rather it stated that it could not "honestly and honorably say that [it] was convinced by a preponderance of the evidence that the statute of limitations discussion came after the defendant had confessed." N.T. 1/31/08 at 87–88. It also noted that, "if the scale does not tip, it remains even, then I have to err on the side of the defendant." *Id.*

11. We note that our review of this matter is hampered by the failure of the trial court to

admissibility of the confession should be assessed under Florida law or Pennsylvania law. At the onset of the suppression hearing, the Commonwealth stated that the suppression issue should be assessed under Florida law, and the trial court agreed. N.T. 1/30/08 at 60. However, it appears that the parties and the trial court used Pennsylvania law at the hearing. Further, the parties cite only to Pennsylvania case law on appeal. For the reasons discussed below, we find that Pennsylvania law is the correct law to apply.

¶ 11 The Pennsylvania Supreme Court has held that:

[i]t is a basic principle of conflicts of laws cases involving criminal matters that the question of jurisdiction and that of governing substantive law always receives the same answer. The governing law is always the law of the forum state, if the forum court has jurisdiction.... [Once it is found that Pennsylvania has jurisdiction] [o]ur inquiry could end there. However, although it is not mandated where more than one state has a substantial connection with the activity in question, the forum state may analyze the interests of all states involved and choose which state's law to apply. In Pennsylvania, we do not apply our law just because we have jurisdiction. Rather we have adopted a flexible choice of law rule which weighs the interests our sister-states may have in the transaction.... To start this analysis we first note that procedural rules and substantive law require separate considerations. It is a fundamental principle of conflicts of laws that a court will use the proce-

dural rules of its own state. That is true in both civil and criminal cases, but especially in criminal cases as a sort of corollary to the local nature of substantive criminal law. Procedures in criminal cases are always those of the forum. On the other hand, substantive law gives or defines the right.

*Commonwealth v. Eichinger*, 591 Pa. 1, 915 A.2d 1122, 1133 (2007) (internal quotations and citations omitted).

■ ¶ 12 In this matter, the Pennsylvania court clearly has jurisdiction as the underlying offenses occurred in Pennsylvania. *Id.*; 18 Pa. Cons.Stat. Ann. § 102(a)(1).[12] Further, the issue of the voluntariness of a confession which implicates an individual's Fifth Amendment right to be free from self-incrimination is a substantive question. *Id.* (noting that a Fifth Amendment claim is a question of substantive rather than procedural law). Thus, the question becomes whether or not there is a conflict between Florida law and Pennsylvania law on this issue.

■ ¶ 13 We find that no such conflict exists. Both Florida and Pennsylvania must effectuate the Fifth Amendment's guarantee that the prosecution may not use a confession or statement obtained from a criminal defendant that was not the "product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In evaluating the voluntariness of a confession both Pennsylvania and Florida look at a totality of the circumstances in determining whether, because of police conduct, the

issue a comprehensive legal opinion in this matter. Instead, the trial court refers us to statements made from the bench on three different days during the suppression hearing. The trial court states that the bases for its ruling can be found at N.T. 1/30/08 at pp. 131–142; 1/31/08 at 82–92, and 2/1/08 at 3–5.

**12.** 18 Pa. Cons.Stat. Ann. § 102(a)(1) provides for a conviction "under the laws of this Commonwealth" when "the conduct which is an element of the offense ... occurs within this Commonwealth."

defendant's "will has been overborne and his capacity for self-determination critically impaired." *Id.; Commonwealth v. Levanduski,* 907 A.2d 3, 25 (Pa.Super.2006); *Thomas v. State,* 456 So.2d 454, 458 (Fla. 1984). Where there is no actual conflict between the laws of Pennsylvania and those of another state, any interest that the sister-state may have in the transaction is rendered moot by that lack of conflict. *Eichinger,* 915 A.2d at 1134. Thus, in the instant matter, we will apply the law of this Commonwealth.

¶ 14 Our standard review when the Commonwealth appeals from an adverse suppression ruling is well settled. A reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as, read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Huntington,* 924 A.2d 1252, 1254 (Pa.Super.2007), *appeal denied,* 593 Pa. 746, 931 A.2d 656 (2007). We are bound by the factual findings of the suppression court that are supported by the record, but we are not bound by the court's conclusions of law. *Commonwealth v. Gaul,* 590 Pa. 175, 912 A.2d 252, 254 (2006). "The determination of whether a confession is voluntary is a conclusion of law, and as such, is subject to plenary review." *Id.* (internal citation omitted).

¶ 15 As noted, Pennsylvania looks at the totality of the circumstances when assessing the voluntariness of a confession. When reviewing voluntariness pursuant to the totality of the circumstances, we should look to:

the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand coercion.

*Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 882 (1998). Further, the Pennsylvania Supreme Court has specifically disavowed the use of a narrow "but-for" test when determining voluntariness. *Commonwealth v. Templin,* 568 Pa. 306, 795 A.2d 959, 964 (2002).

¶ 16 In the instant matter, it appears that the trial court employed the disavowed approach, focusing solely on the ultimately incorrect statement that Appellee would not be prosecuted in Pennsylvania and concluding that he would not have confessed but-for that statement. The trial court did not make an examination of the totality of the circumstances or look at the factors highlighted above in rendering its decision. This was error.

¶ 17 In examining the totality of the circumstances in this matter, we first note that this is not a case where either the Philadelphia or Florida police attempted to deliberately mislead the Appellee, employ subterfuge, or otherwise engage in fabrication to induce a defendant to confess. The record clearly demonstrates that the police believed the statement to be accurate at the time it was made. The detectives thought that Pennsylvania authorities could not prosecute because the statute of limitations period had run. It was not until later that the Philadelphia District Attorney's Office decided that three circumstances unique to Appellee's situation, the age of his alleged victims, his employment as a fireman while residing in Philadelphia, and his moving out of the jurisdiction, when combined could serve to toll the statute of limitations. Further, we are not dealing with a *quid pro quo* situation where detectives told Appellee that he would not be prosecuted *if* he confessed.

¶ 18 Instead, the record reflects that the interview was conducted by two plain-clothes detectives in Appellee's living room. It lasted approximately fifteen to

twenty minutes. The detectives spoke to Appellee in calm voice and the questioning never got "heated or accusatory." N.T. 1/30/08 at 102. Appellee's freedom of movement was never restricted. The detectives stated that Appellee was calm and quiet throughout the interview. N.T. 1/30/08 at 89–91. Lastly, Detective Lumpkin's recollection of Appellee's demeanor during the interview belies the assertion that Appellee was coerced. Detective Lumpkin testified that when he read a portion of one of the alleged victim's statements and asked Appellee if it was true, Appellee was:

> ... quiet. I mean, he brought his hands up to his face, I've got in my report, like a praying position. His head was bowed. He seemed like a lot was going through his mind. He was quiet. He didn't seem angry. He didn't seem nervous. He just seemed very somber, if you will.

¶ 19 In *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989), the police took a juvenile into custody and questioned him for over five hours on one day and over five and one-half hours on the second day concerning the sexual assault of one child and the murder and sexual assault of a second child. The defendant had been arrested, taken into custody from his bedroom, and driven to police headquarters. The defendant was questioned in the presence of two uncles and given a lie detector test. After the defendant and his uncles were told that he failed the lie detector test, the police and his uncles "prodded" him to confess. On the first day, the defendant gave both oral and written statements confessing to the sexual assault of the first child and the murder and sexual assault of the second child. The next day, after further interrogation, the defendant made additional admissions regarding the murder. *Id.* at 1268–69. On appeal, defendant challenged the voluntariness of the confession arguing that his free will was overborne by the prodding of the police and his uncles and by the later-discovered to be mistaken statement that he had failed the polygraph. *Id.* at 1273. The record disclosed that the detective questioning the defendant had been given inaccurate information by the polygraphist that the defendant had failed the test, when, in fact, the results were inconclusive. *Id.* at 1274. The Pennsylvania Supreme Court held, after examining the totality of the circumstances, that the defendant's confession was voluntary. *Id.*

¶ 20 The circumstances in the instant matter are far less coercive than those allowed in *Hughes*. Further, as in *Hughes*, there was no subterfuge by police; rather there was good faith reliance on information that later proved to be incorrect.[13] There is simply nothing in the record to support a finding that, when the voluntariness issue is properly examined in light of the totality of the circumstance, the circumstances were so inherently coercive as to deprive Appellee of his free will. We thus hold that the trial court erred in excluding the confession.

---

**13.** In a recent decision, *Herring v. United States*, —— U.S. ——, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), the United State Supreme Court addressed the issue of police mistakes and their impact on the subsequent admissibility of evidence, albeit in a Fourth Amendment context. Writing for the majority, Chief Justice Roberts stated:

> we conclude that when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence [to be achieved by excluding the evidence] does not pay its way. In such a case, the criminal should not go free because the constable has blundered.

*Id.* at 704 (internal quotations and citations omitted).

¶ 21 Our conclusion that Appellee's confession was voluntary is buttressed by the fact that the Pennsylvania Supreme Court has found confessions to be voluntary even in cases where the police made intentional misrepresentations, so long as the remaining circumstances suggest that the confession was voluntary. In *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974), the Pennsylvania Supreme Court found a confession to be voluntary even though, after the defendant gave an initial exculpatory statement, the detective falsely claimed that a co-conspirator had implicated him. *Jones*, 322 A.2d at 126. The Pennsylvania Supreme Court explained that it did not believe that the alleged fabrication was either likely to cause an untrustworthy confession, nor was it so reprehensible as invalidate the confession by offending basic notions of fairness. *Id. See also, Commonwealth v. Williams*, 537 Pa. 1, 640 A.2d 1251, 1259 (1194) (Appellant's claim that police falsely stated that they had located a gun sold by Appellant which was of the same caliber used in the crime, was not sufficient to render a confession involuntary absent other coercive circumstances). Here, Detective Lumpkin's mistaken statement was more likely to cause a *trustworthy* confession rather than an *untrustworthy* confession, and we do not find the mistake to be reprehensible so as to offend basic notions of fairness.

¶ 22 Based upon the foregoing, we hold that the trial court erred by suppressing the confession. Accordingly, we reverse the order so holding and remand the matter for trial.

¶ 23 Order **REVERSED.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**