J-S09010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH LAMAR FOSTER | : | No. 519 WDA 2022 |

Appeal from the Order Entered April 18, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0006450-2021

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JUNE 22, 2023**

The Commonwealth appeals from the trial court's April 18, 2022 order granting Appellee's, Keith Lamar Foster (hereinafter "Foster"), pretrial motion to suppress statements he made during a police interview.  After careful review, we reverse the order and remand for further proceedings.

The trial court summarized the pertinent background of this case, as follows:

> This is a Commonwealth appeal of this [c]ourt's grant of a motion to suppress [Foster's] statements.  During the course of an investigation into a sexual assault, Detective Brian Sellers of the City of Pittsburgh Bureau of Police obtained a search warrant for a buccal swab of [Foster's] DNA.  In the affidavit of probable cause submitted in support of that search warrant, Detective Sellers represented to a judicial officer that probable cause existed to obtain [Foster's] DNA based on the fact that male DNA was recovered from the alleged victim and [Foster] was alone with the alleged victim on the evening of the alleged sexual assault.  Shortly after obtaining the search warrant, Detective Sellers summoned [Foster] to police headquarters and interviewed

> [Foster]. [Foster] was not placed in handcuffs or other restraints and he was not provided with **_Miranda_**[1] warnings. Detective Sellers specifically informed [Foster] that he was not under arrest and [stated that Foster] … was not a suspect in the sexual assault of the victim. He then interviewed [Foster].

Trial Court Opinion (TCO), 11/22/22, at 1.

During Foster's interview, he stated that he did not know the victim and did not have sexual intercourse with her. **_See_** N.T. Suppression Hearing, 4/18/22, at 15-16; Reply Brief in Support of Motion to Suppress, 3/29/22, at 4. At the close of the interview, Foster consented to his DNA being taken, and it was subsequently found to be a match to male DNA found during the victim's sexual assault examination, thus demonstrating that Foster did have some sort of sexual contact with the victim. **_See_** Reply Brief in Support of Motion to Suppress at 5. Consequently, the Commonwealth intends to use Foster's statements to Detective Sellers, in which he denied knowing the victim or having any contact with her, against Foster at trial by showing that he lied to the detective. **_See_** N.T. Suppression Hearing, 4/18/22, at 5-6.

Foster filed a pre-trial motion to suppress his statements to Detective Sellers, arguing that his statements were not voluntary, given the totality of the circumstances. **_See_** Reply Brief in Support of Motion to Suppress at 9. Specifically, Foster claimed that his "choice to give a statement to Detective Sellers was not free and unconstrained since Detective Sellers misrepresented the fundamental nature of the interaction" by telling Foster he was not a

---

[1] **_Miranda v. Arizona_**, 384 U.S. 436 (1966).

- 2 -

suspect. *Id.* According to Foster, "[w]ithout knowing he was a suspect, [his] capacity for self-determination was critically impaired." *Id.*

The trial court conducted a bifurcated suppression hearing, with testimony being offered on February 15, 2022, and argument by the parties occurring on April 18, 2022. At the close of the hearing on April 18th, the court found that Foster's statements were involuntary based on the misrepresentation by Detective Sellers that Foster was not a suspect, despite Detective Foster obtaining a warrant for Foster's DNA prior to the interview. Specifically, the court reasoned:

> [The Court]: We don't issue warrants to take evidence for criminal cases on the basis that we want to eliminate somebody from criminal conduct. Well, let's see, I know that Mr. Jones over here didn't do it; I want to get his DNA to prove it. We don't do that. We say, I think Mr. Jones is a viable suspect in this case, and I want his DNA because I think it's going to turn out to be the DNA that was on the victim. That's the whole point of it.
>
> And by the way, I don't think Detective Sellers was trying to be a wise guy, but he misunderstood what he was doing. He tells a [j]udge in the Affidavit of Probable Cause, I think this guy is a viable suspect for this terrible crime. Here's why. The [j]udge agrees with him. He tells [Foster], no, you're not a suspect; if you say something that changes that I'll let you know.
>
> And it's the nature of the misrepresentation that troubles me. It's not, hey, one of the boys that came out after you, they saw you get in the car; they saw you put your hands on her; they saw her resisting you. Let's say that's all a lie; they can do that. They can tell him that they have facts they don't have.
>
> But to tell him, you're not a suspect, and I want you to make a valid decision on asserting your rights or not, that's a different kind of misrepresentation that goes to the voluntariness of the statement. Is it something that's prejudicial against him? Yes, you want to use it. It's not neutral.

So[,] on the basis of everything that we discussed, the motion to suppress [Foster's] statements that he didn't know the victim and didn't have any interaction with her prior to him being ***Mirandized*** are suppressed, because it goes to voluntariness, not to the custodial interrogation. It goes to voluntariness. Motion granted.

N.T. Suppression Hearing, 4/18/22, at 14-16.[2]

That same day, the court issued an order granting Foster's motion to suppress. The Commonwealth filed a timely notice of appeal, and certified that the court's order substantially handicaps its prosecution of this case. ***See*** Pa.R.A.P. 311(d). It then timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on November 2, 2022. Herein, the Commonwealth states the following issue for our review: "Whether the trial court erred in granting the motion to suppress?" Commonwealth's Brief at 5.

To begin, we recognize that,

[i]n appeals from orders granting suppression, our scope of review is limited to the evidence presented at the suppression hearing. ***In the Interest of L.J.***, … 79 A.3d 1073, 1088–89 ([Pa.] 2013). Thus, we may consider only the evidence from the appellee's witnesses together with the Commonwealth's evidence that, when read in context of the record at the suppression hearing, remains uncontradicted. ***Id.***; ***Commonwealth v. Whitlock***, 69 A.3d 635, 637 (Pa. Super. 2013). As for the standard of review, we apply no deference to the suppression court's legal conclusions. ***Whitlock***, 69 A.3d at 637. In contrast, we defer to the suppression court's findings of fact, "because it is the fact-finder's

---

[2] We note that Foster also argued, in his motion to suppress, that he was subject to a custodial interrogation that required ***Miranda*** warnings. ***See*** Omnibus Pre-Trial Motion at 3. The court's statements at the close of the suppression hearing indicate that it did not find that Foster was subject to a custodial interrogation. For the reasons set forth *infra*, we discern no error in the court's determination. ***See*** footnote 3, *infra*.

- 4 -

sole prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony." *Id.*

*Commonwealth v. Davis*, 102 A.3d 996, 999 (Pa. Super. 2014) (footnote omitted).

Instantly, the Commonwealth challenges the trial court's determination that Foster's statements to Detective Sellers were involuntary based on the detective's telling Foster that he was not a suspect in the case, although the detective had obtained a warrant for Foster's DNA. Specifically, in its Rule 1925(a) opinion, the court explained its decision to grant Foster's motion to suppress, as follows:

> This [c]ourt granted suppression because it believed [Foster's] statement was not voluntary. "[T]he ultimate test for voluntariness is whether the confession is the product of an essentially free and unconstrained choice by its maker." *Commonwealth v. Fleck*, 471 A.2d 547, 549 (Pa. Super. 1984). "[T]he voluntariness of a confession is determined by the totality of the circumstances." *Commonwealth v. Templin*, 795 A.2d 959, 963-[]64 (Pa. 2002) (citation omitted). In *Templin*, the Pennsylvania Supreme Court … explained as follows:
>
>> In determining voluntariness, the question is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. "By the same token, the law does not require the coddling of those accused of crime. One such need not be protected against his own innate desire to unburden himself." *Commonwealth v. Graham*, … 182 A.2d 727, 730-31 ([Pa.] 1962). Factors to be considered in assessing the totality of the circumstances include the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Id.* at 966 (some internal quotation marks and citations omitted).

It is this court's view that the circumstances of [Foster's] interrogation deprived [him] of making a free and unconstrained choice to undergo an interview relative to the sexual assault of the alleged victim. [Foster] was not restrained or informed that he was not permitted to leave[,] and the interview did not appear coercive. However, Detective Sellers misrepresented to [Foster] that he was not a suspect in the sexual assault of the victim prior to interviewing him. It is this [c]ourt's belief that Detective Sellers' misrepresentations were designed to[,] and did[,] induce [Foster] to speak with Detective Sellers. This [c]ourt firmly believes that had Detective Sellers been truthful with [Foster], Detective Sellers would have informed [Foster] of his *Miranda* rights and [Foster] would have been in a position to knowingly and intelligently make a decision as to his constitutional rights. This [c]ourt does not believe that [Foster's] decision to speak with Detective Sellers was a product of an informed and conscious choice. On the contrary, his decision to speak with Detective Sellers was borne solely from Detective Sellers' affirmative misrepresentation that [Foster] was not a suspect in a sexual assault. This assurance manipulated [Foster] to believe that he was exposed to no jeopardy by agreeing to the interview.

For the foregoing reasons, the suppression motion was properly granted.

TCO at 2-3.

On appeal, the Commonwealth argues that, "[d]espite referencing the proper 'totality of the circumstances' test, the trial court actually used the disavowed 'but for' test, focusing only on the incorrect statement that [Foster] was not a suspect" in concluding that his statements were involuntary. Commonwealth's Brief at 17. The Commonwealth stresses that Foster

traveled to the police station on his own. He was not locked into the interview room. He was not handcuffed or restrained in any way. He was not badgered or demeaned. He was informed that he wasn't a suspect and that if he did start to give incriminating information, he would be given his *Miranda* rights ([TCO] at []1; Appendix B at B-1). [The trial court] watched the interview and

- 6 -

found that there was "nothing coercive in the detective's manner, demeanor, or anything like that[.]" [N.T. Suppression Hearing] at [] 28. What caused the court to suppress the statement was the sole factor that [Foster] had been misled about being a "suspect":

> THE COURT: I agree. So far what I've seen there is nothing coercive in the detective's manner, demeanor, or anything like that, I agree. It is one thing to say your buddy is over there ratting you out, that is total misrepresentation, that is acceptable and legal. It's another thing on the issue of voluntariness to mislead unintentionally somebody by saying you're not a subject. The officer, the detective, could have believed that he was not a subject because he didn't have enough to go on but the fact is that he represented to a judge that [Foster's] DNA is important to this criminal investigation so on that[, the] particular representation "you are not a suspect of this investigation yet," that is misleading. That goes to the voluntariness, not as to some fact, some collateral fact. That is the part I am having trouble with.

*Id.* at 17-18 (quoting N.T. Suppression Hearing, 2/15/22, at 28-29).

The Commonwealth contends that the court erred in concluding that Detective Sellers' misrepresentation to Foster that he was not a suspect was sufficient, in and of itself, to render his statements involuntary. It points out that "a statement can be obtained when police make intentional misrepresentations, so long as the totality of the circumstances goes to show that the statement was voluntary." Commonwealth's Brief at 19-20 (citing **Commonwealth v. Roberts**, 969 A.2d 594 (Pa. Super. 2009)). In **Roberts**, a Philadelphia detective obtained a statement from Roberts after a woman accused Roberts of sexually abusing her 20 years earlier. *Id.* at 595-96. At the conclusion of the interview, the detective told Roberts that "he believed that prosecution was not possible, because the statute of limitations period

had passed, but stated he would give the information to the Philadelphia District Attorney's Office and would speak with police in Florida, where the [victim] resided." *Id.* at 596. Thereafter, officers from Florida interviewed Roberts in the living room of his home. *Id.* Although the officers were carrying their service weapons, they wore plain clothes and were driving an unmarked car. *Id.* "At some point during the interview, [the officers] informed [Roberts] that the Commonwealth of Pennsylvania was not going to prosecute him because of the statute of limitations issue." *Id.* Roberts subsequently admitted that the allegations made against him were true. *Id.*

Ultimately, the Philadelphia District Attorney's Office concluded that the statute of limitations had been tolled for various reasons, and they filed charges against Roberts. He moved to suppress his statement to the Florida officers, and the trial court granted that request, concluding that although the Florida officers' "statement that [Roberts] would not be prosecuted … had been made in good faith, … the statement rendered [Roberts'] confession involuntary." *Id.* The Commonwealth appealed, and we reversed the trial court's order. Initially, we noted:

> Pennsylvania looks at the totality of the circumstances when assessing the voluntariness of a confession. When reviewing voluntariness pursuant to the totality of the circumstances, we should look to[,]
>
>> the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand coercion.

- 8 -

> ***Commonwealth v. Nester***, … 709 A.2d 879, 882 ([Pa.] 1998).
> Further, the Pennsylvania Supreme Court has specifically
> disavowed the use of a narrow "but-for" test when determining
> voluntariness. ***Commonwealth v. Templin***, … 795 A.2d 959,
> 964 ([Pa.] 2002).

***Id.*** at 599. We then explained:

> In the instant matter, it appears that the trial court employed the
> disavowed approach, focusing solely on the ultimately incorrect
> statement that [Roberts] would not be prosecuted in Pennsylvania
> and concluding that he would not have confessed but-for that
> statement. The trial court did not make an examination of the
> totality of the circumstances or look at the factors highlighted
> above in rendering its decision. This was error.
>
> In examining the totality of the circumstances in this matter, we
> first note that this is not a case where either the Philadelphia or
> Florida police attempted to deliberately mislead … [Roberts],
> employ subterfuge, or otherwise engage in fabrication to induce a
> defendant to confess. The record clearly demonstrates that the
> police believed the statement to be accurate at the time it was
> made. The detectives thought that Pennsylvania authorities could
> not prosecute because the statute of limitations period had run.
> It was not until later that the Philadelphia District Attorney's Office
> decided that three circumstances unique to [Roberts'] situation,
> the age of his alleged victims, his employment as a fireman while
> residing in Philadelphia, and his moving out of the jurisdiction,
> when combined could serve to toll the statute of limitations.
> Further, we are not dealing with a *quid pro quo* situation where
> detectives told [Roberts] that he would not be prosecuted *if* he
> confessed.
>
> Instead, the record reflects that the interview was conducted by
> two plainclothes detectives in [Roberts'] living room. It lasted
> approximately fifteen to twenty minutes. The detectives spoke to
> [Roberts] in calm voice and the questioning never got "heated or
> accusatory." [Roberts'] freedom of movement was never
> restricted. The detectives stated that [Roberts] was calm and
> quiet throughout the interview. Lastly, [the officer's] recollection
> of [Roberts'] demeanor during the interview belies the assertion
> that [Roberts] was coerced. [The officer] testified that when he
> read a portion of one of the alleged victim's statements and asked
> [Roberts] if it was true, [Roberts] was:

… quiet.  I mean, he brought his hands up to his face, I've got in my report, like a praying position.  His head was bowed.  He seemed like a lot was going through his mind.  He was quiet.  He didn't seem angry.  He didn't seem nervous.  He just seemed very somber, if you will.

*Id.* at 599-600 (emphasis in original; internal citations to the record omitted).

The **Roberts** panel also found that the facts before it were "far less coercive than those allowed in [**Commonwealth v.**] **Hughes**[, 555 A.2d 1264 (Pa. 1989)]."  *Id.* at 600.  In that case,

the police took [Hughes,] a juvenile[,] into custody and questioned him for over five hours on one day and over five and one-half hours on the second day concerning the sexual assault of one child and the murder and sexual assault of a second child.  [Hughes] had been arrested, taken into custody from his bedroom, and driven to police headquarters.  [Hughes] was questioned in the presence of two uncles and given a lie detector test.  After [Hughes] and his uncles were told that he failed the lie detector test, the police and his uncles "prodded" him to confess.  On the first day, [Hughes] gave both oral and written statements confessing to the sexual assault of the first child and the murder and sexual assault of the second child.  The next day, after further interrogation, [Hughes] made additional admissions regarding the murder.  On appeal, [Hughes] challenged the voluntariness of the confession arguing that his free will was overborne by the prodding of the police and his uncles and by the later-discovered to be mistaken statement that he had failed the polygraph.  The record disclosed that the detective questioning the defendant had been given inaccurate information by the polygraphist that the defendant had failed the test, when, in fact, the results were inconclusive.  The Pennsylvania Supreme Court held, after examining the totality of the circumstances, that [Hughes'] confession was voluntary.

**Roberts**, 969 A.2d at 600 (internal citations to **Hughes** omitted).

Comparing the facts in **Hughes** to those in **Roberts**, the **Roberts** panel found that the circumstances were "far less coercive…."  *Id.*  We explained that,

as in **Hughes**, there was no subterfuge by police; rather there was good faith reliance on information that later proved to be incorrect. There is simply nothing in the record to support a finding that, when the voluntariness issue is properly examined in light of the totality of the circumstance, the circumstances were so inherently coercive as to deprive [Roberts] of his free will. We thus hold that the trial court erred in excluding the confession.

Our conclusion that [Roberts'] confession was voluntary is buttressed by the fact that the Pennsylvania Supreme Court has found confessions to be voluntary even in cases where the police made intentional misrepresentations, so long as the remaining circumstances suggest that the confession was voluntary. In **Commonwealth v. Jones**, … 322 A.2d 119 ([Pa.] 1974), the Pennsylvania Supreme Court found a confession to be voluntary even though, after the defendant gave an initial exculpatory statement, the detective falsely claimed that a co-conspirator had implicated him. **Jones**, 322 A.2d at 126. The Pennsylvania Supreme Court explained that it did not believe that the alleged fabrication was either likely to cause an untrustworthy confession, nor was it so reprehensible as invalidate the confession by offending basic notions of fairness. **Id. See also**, **Commonwealth v. Williams**, … 640 A.2d 1251, 1259 ([Pa.] 1194) ([finding that the a]ppellant's claim that police falsely stated that they had located a gun sold by [the a]ppellant which was of the same caliber used in the crime, was not sufficient to render a confession involuntary absent other coercive circumstances). Here, [the officer's] mistaken statement was more likely to cause a *trustworthy* confession rather than an *untrustworthy* confession, and we do not find the mistake to be reprehensible so as to offend basic notions of fairness.

**Roberts**, 969 A.2d at 600-01 (emphasis in original; footnote omitted).

Based on our discussion in **Roberts**, and our Supreme Court's decisions in **Jones** and **Williams**, we conclude that the misrepresentation made by Detective Sellers in the present case did not render Foster's statements involuntary. Initially, however, we disagree with the Commonwealth that the trial court failed to consider **any** of the pertinent factors under the totality-of-the-circumstances test. The court recognized that Foster "was not restrained

- 11 -

or informed that he was not permitted to leave[,] and the interview did not appear coercive." TCO at 2. However, the court made no mention of the duration of the interview, Foster's psychological state, or the conditions attendant to his detention. *See Roberts*, 969 A.2d at 599. The Commonwealth elaborated on these factors in its brief in opposition to Foster's suppression motion, stating:

> Once he arrived at police headquarters, [Foster] was escorted to an interview room without the use of handcuffs or leg shackles. He was permitted to retain and use his phone. He waited alone in the room, with the door unlocked, for approximately five minutes. During that time, he used his phone to make phone and video calls. After five minutes, Detective Sellers entered the interview room and shut the door but did not lock it. He was dressed in plainclothes with his service weapon on his hip. Detective Sellers began by telling [Foster] he was not a suspect and that the questions he would be asking were to determine the events of the night of January 25[], 2019. Detective Sellers did not read [Foster] his *Miranda* warnings as he was not under arrest at the time, but told him that it was possible that information could come out during the course of the interview that would require the reading of [Foster's] *Miranda* rights. Detective Sellers told [Foster] that if that happened, he would pause the interview and read [Foster's] *Miranda* rights. [Foster] stated he understood, and during questioning, [Foster] stated that he did not know the [v]ictim before that evening, but that he did pick her up after she wrecked her car. He also stated that he had never had sex with the [v]ictim. The interview lasted approximately twenty minutes, at which point [Foster] was allowed to leave the station. Prior to leaving, [Foster] provided a DNA sample.

Commonwealth's Brief in Opposition of Motion to Suppress, 3/16/22, at 3-4.

In sum, it is apparent that Foster willingly came to the police station for the interview. He was not handcuffed or locked in the room, he was permitted to use his cell phone during the five minutes he waited for the interview to

commence, and the duration of the interview was brief. The trial court expressly found that Detective Sellers' manner and demeanor during the interview was not coercive. *See* N.T. Suppression, 2/15/22, at 28.[3] The totality of these circumstances establish that Foster's statements were voluntary.

Moreover, given the decisions in *Roberts* and *Hughes*, we do not agree with the trial court that Foster's statements were rendered involuntarily simply because of Detective Sellers' misrepresentation to Foster that he was not a suspect in this case. While in *Roberts* the defendant was mistakenly told, by two different interviewing officers, that he could *never* be prosecuted for the crimes about which he was being questioned, here, Foster was simply told

_____

[3] We note that, in his appellate brief, Foster does not develop an argument that he was subject to a custodial detention but, based on the totality of these circumstances, we would find no error in the trial court's conclusion that he was not. Based on the factors just discussed, it is clear that Foster was not "physically deprived of his freedom in any significant way" and he was not "placed in a situation" where he would have "reasonably believe[d] that his freedom of action or movement [was] restricted by such interrogation." *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999) (citations omitted). In other words, "the totality of the circumstances," or "the conditions and/or duration of the detention" were not "so coercive as to constitute the functional equivalent of arrest." *Id.* (citations omitted). While Foster was interviewed at the police station, he came there voluntarily, he was not restrained, Detective Sellers did not use or threaten force, and the duration of the interview was brief. *See id.* (setting forth factors to utilize in determining whether a detention has become so coercive as to be the functional equivalent of an arrest) (citation omitted). Thus, we would agree with the court that Foster was not subject to a custodial interrogation requiring *Miranda* warnings.

that he was not a suspect *at that time*. Notably, Detective Sellers informed Foster that if he said anything inculpatory, he would be provided with *Miranda* warnings, thereby indicating that Foster *could* become a suspect depending on what he said during the interview. Further, as in *Roberts*, the trial court in this case found that the misrepresentation to Foster was unintentional and simply a misunderstanding on the part of Detective Sellers. *See* N.T. Suppression Hearing, 4/18/22, at 14-15 ("I don't think Detective Sellers was trying to be a wise guy, but he misunderstood what he was doing."). Unlike in *Hughes*, Foster was not pushed to confess, or subject to multiple, hours-long interviews. Therefore, the circumstances of this case are less coercive than those in *Roberts* and *Hughes*.

Accordingly, we conclude that the totality of the circumstances demonstrates that Foster's statements to Detective Sellers were voluntary, despite the misrepresentation to Foster that he was not a suspect. Consequently, the trial court erred by granting Foster's motion to suppress.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2023

- 14 -